UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

_____
                                            *
NATIONAL ASSOCIATION OF TOBACCO             *
OUTLETS, INC.; R.J. REYNOLDS TOBACCO        *
COMPANY; PHILIP MORRIS USA INC.;            *
LORILLARD TOBACCO COMPANY,                  *
                                            *
      Plaintiffs,                          *    CIVIL ACTION
                                            *    NO. _____
   v.                                       *    (Electronically Filed)
                                            *
CITY OF WORCESTER, Massachusetts;           *
DIVISION OF PUBLIC HEALTH of Worcester,     *
Massachusetts; B. DALE MAGEE, in his official *
capacity as Commissioner of Public Health of  *
Worcester, Massachusetts; MICHAEL V.        *
O'BRIEN, in his official capacity as City Manager *
of Worcester, Massachusetts,                *
                                            *
      Defendants.                          *
_____         *

## COMPLAINT

Plaintiffs National Association of Tobacco Outlets, Inc. ("NATO"), and R.J. Reynolds Tobacco Company ("RJRT"), Philip Morris USA Inc. ("PM USA"), and Lorillard Tobacco Company ("Lorillard") (collectively, the "Tobacco Manufacturer Plaintiffs"), through their undersigned counsel, allege upon knowledge as to Plaintiffs, and upon information and belief as to all other matters, as follows:

### INTRODUCTION

1. In *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 556-66 (2001), the United States Supreme Court held that "so long as the sale and use of tobacco is lawful for adults, the tobacco

-2-

industry has a protected interest in communicating information about its products and adult customers have an interest in receiving that information." *Id.* at 571.  It thus struck down a Massachusetts regulation that prohibited outdoor advertising of tobacco products within 1,000 feet of a school or playground.

2. On May 10, 2011, the City Council of Worcester, Massachusetts amended its Tobacco Products Control Ordinance, *Worcester, Mass., Rev. Ordinances of 2008* ch. 8, § 3, to impose a far broader ban on advertising than the one invalidated in *Lorillard*.  *See* Worcester, Mass., Ordinance Further Regulating the Sale and Advertising of Tobacco Products (May 10, 2011) ("the Ordinance").  The Ordinance prohibits any person from "display[ing] any advertising that promotes or encourages the sale or use of cigarettes . . . or other tobacco products in any location where any such advertising can be viewed from any street or park shown on the Official Map of the city or from any property containing a public or private school or property containing an educational institution."  § 5.  It thus prohibits (1) all outdoor advertising, *and* (2) all indoor advertising that can be viewed from the street (*e.g.*, through a window).

3. Since, as the Supreme Court held in *Lorillard*, the First Amendment prohibits a ban on tobacco advertising that is visible from outside, within 1,000 feet of a school or playground, it follows, *a fortiori*, that the First Amendment bars a *complete ban* on tobacco advertising that is visible from outside, anywhere in an entire city.

4. Accordingly, Plaintiffs seek a declaration that the Ordinance violates the Constitution and deprives Plaintiffs of their civil rights under 42 U.S.C. § 1983, a preliminary and permanent injunction against the Ordinance's enforcement, attorneys' fees and costs, and all other appropriate relief.

## PARTIES

5.      Plaintiff NATO is a membership association with its headquarters in Minneapolis, Minnesota. It represents and promotes the interests of tobacco retailers, tobacco-related manufacturers, and tobacco-related wholesale distributors. Its tobacco retailer members sell tobacco products in Worcester and engage in advertising that would be banned by the Ordinance.

6.      Plaintiff RJRT is a wholly-owned subsidiary of Reynolds American, Inc., a North Carolina corporation. RJRT's headquarters are located in Winston-Salem, North Carolina. RJRT is the second-largest tobacco manufacturer in the United States. Its cigarette and smokeless tobacco products are sold under the brand names Camel, Pall Mall, Winston, Salem, Doral, and Kool, among others. RJRT is a signatory to the 1998 Master Settlement Agreement ("MSA") as an Original Participating Manufacturer under the MSA. Its cigarette and smokeless tobacco brands are sold in Worcester, Massachusetts and are advertised in a manner that would be barred by the Ordinance.

7.      Plaintiff PM USA is a wholly-owned subsidiary of Altria Group, Inc., a Virginia corporation. PM USA's headquarters are located in Richmond, Virginia. PM USA is the largest tobacco company in the United States. Its cigarette and smokeless tobacco products are sold under the brand names Marlboro, Parliament, Virginia Slims, and Basic, among others. PM USA is a signatory to the 1998 Master Settlement Agreement as an Original Participating Manufacturer under the MSA. Its cigarette and smokeless tobacco brands are sold in Worcester, Massachusetts and are advertised in a manner that would be barred by the Ordinance.

8.      Plaintiff Lorillard is a wholly-owned subsidiary of Lorillard, Inc. Lorillard's headquarters are located in Greensboro, North Carolina. Lorillard is the third largest tobacco company in the United States. Its cigarette products are sold under the brand names Newport,

Kent, True, Maverick, and Old Gold. Lorillard is a signatory to the 1998 Master Settlement Agreement as an Original Participating Manufacturer under the MSA. Its cigarette brands are sold in Worcester, Massachusetts and are advertised in a manner that would be barred by the Ordinance.

9. Defendant City of Worcester ("the City") is a municipality of the Commonwealth of Massachusetts. Its Ordinance is administered by the Commissioner of Public Health of the City.

10. Defendant the Division of Public Health of Worcester, Massachusetts ("the Division"), is a municipal public health agency. It is led by a commissioner who is responsible for administering the portions of the Ordinance at issue here.

11. Defendant Dr. B. Dale Magee is Commissioner of Public Health of Worcester, Massachusetts ("the Commissioner"), and is the head of its Public Health Division within the city government. In his official capacity, Dr. Magee is charged with administering the portions of the Ordinance at issue here.

12. Defendant Michael V. O'Brien is City Manager of Worcester, Massachusetts.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331.

14. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) to redress deprivations "under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States."

15. Plaintiff NATO has standing to sue as an association on behalf of its members because its members sell tobacco products in Worcester; it seeks to protect their interests; and

"neither the claim asserted nor the relief requested requires the participation" of its members. *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

16. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

17. Injunctive relief is authorized by Federal Rule of Civil Procedure 65.

18. Venue is proper in this district under 28 U.S.C. § 1391(b).

19. An actual controversy currently exists between the parties concerning the constitutionality of the Ordinance's advertising ban. A declaration of the Ordinance's constitutionality and an injunction against its enforcement would resolve this controversy.

20. A preliminary injunction to enjoin Defendants from enforcing the Ordinance's advertising ban will protect Plaintiffs' rights during this proceeding, and a permanent injunction will protect Plaintiffs' rights after this proceeding concludes.

## FACTUAL ALLEGATIONS

21. On May 10, 2011, the City Council of Worcester enacted the Ordinance.

22. The Ordinance provides: "No person shall display any advertising that promotes or encourages the sale or use of cigarettes, blunt wrap or other tobacco products in any location where any such advertising can be viewed from any street or park shown on the Official Map of the city or from any property containing a public or private school or property containing an educational institution." § 5.

23. The Ordinance effects a total ban on outdoor tobacco advertising in the City of Worcester. Any advertisement which can be viewed from any property containing a public or private school, an educational institution, or "any street or park shown on the Official Map" is banned. General Laws of Massachusetts ch. 41 § 81E provides that the official city map must

show "the public ways and parks therein as therefore laid out and established by law and the private ways then existing and used in common by more than two owners." As a practical matter, this definition means that signs visible from any street or road in Worcester are subject to the ban. This includes tobacco advertisements for the products of Tobacco Manufacturer Plaintiffs or any other tobacco manufacturers in (1) any outdoor location in the City of Worcester, or (2) any indoor location in the City of Worcester, if such advertisements are visible from the street. For example, if such indoor advertising could be seen through a window from a public street, then the Ordinance prohibits such indoor advertising.

24.     Under the Ordinance, a "'retail tobacco store' or a 'smoking bar'"— establishments that primarily sell tobacco products, for which non-tobacco products constitute no more than 20% of gross revenue, and which prohibit entry by individuals under 18 years of age—may display a generic sign that says "tobacco products sold here." The vast majority of retailers in Worcester, however, such as convenience and grocery stores, do not prohibit entry by individuals under 18 years of age. In addition, even under this exemption, adult-only retail establishments may not display any advertisement that "contains any brand name, brand or corporate insignia, trade mark or trade name of any cigarette product, producer or distributor." Consequently, like all other persons in Worcester, "retail tobacco stores" and "smoking bars" are prohibited from displaying advertisements of Tobacco Manufacturer Plaintiffs' products or any other tobacco manufacturers' products either outdoors or indoors if such advertisements are visible from the street.

25.     The Ordinance thus completely bans all outdoor tobacco advertisements, as well as indoor advertisements of tobacco products that are visible from the street.

-6-

26.     The Ordinance is intended to "restrict the advertising of tobacco products to reduce the number of smokers and consequential death and human suffering in the city of Worcester."  Ordinance § 1; *see also id.* at § 1(a)(9); Letter from David M. Moore to Michael V. O'Brien at 3 (Mar. 24, 2011) ("Moore Opinion").  As one of the Ordinance's principal proponents explained, it is designed to "be a ban on tobacco advertisements in the City of Worcester."  Testimony of Prof. Laurie Ross, Worcester City Council Meeting (Apr. 5, 2011).

27.     The Ordinance is based on the City Council's judgment that the adult citizens of Worcester cannot be trusted to make decisions regarding their own health and that tobacco advertising may lead adults to make what it believes is the wrong choice about tobacco use.  As David M. Moore, the City Solicitor of the City of Worcester, explained in his section-by-section analysis of the Bill, Section 1 of the Ordinance replaces the pre-existing Tobacco Products Control Ordinance's Declaration of Findings and Policy, "which was focused on minors," with a Declaration focused on the "death and devastating effects on human life caused by tobacco on the entire population."  Moore Opinion at 2.  Accordingly, the Ordinance seeks to outlaw all outdoor (and some indoor) tobacco advertising not merely to prevent youth tobacco use, but to prevent adults from making decisions of which the City disapproves.

28.     The Ordinance takes effect on June 24, 2011.  Consequently, on June 24, 2011, all outdoor advertisements of tobacco products, as well as indoor advertisements of such products that are visible from the street, will be banned in Worcester.[1]

---

[1] Following enactment of the Ordinance, Plaintiff PM USA sought clarification from the City regarding enforcement as to indoor tobacco advertising that may be visible from the street.  On May 24, 2011, the City Solicitor issued a letter stating that "the incidental visibility of tobacco products through a window at a retail establishment would not qualify as 'advertising' under the ordinance."  Letter of David M. Moore to Greg D'Agostino (May 24, 2011).  In a June 8, 2011 email, the City Solicitor offered to add the phrase "including tobacco product display fixtures directed toward customers within the establishment" as not constituting "advertising" under the Ordinance.  Email of David M. Moore to Greg D'Agostino (June 8, 2011).  Through these statements, the City is reserving the right to enforce the Ordinance against certain indoor tobacco advertising visible from the street.

29. Members of NATO engage in advertising that is affected by the Ordinance. NATO's members engage in outdoor advertising of tobacco products or in indoor advertising of tobacco products that may be visible from the street.

30. Tobacco Manufacturer Plaintiffs produce and distribute advertising for their cigarette and other tobacco products to retailers in Worcester that sell tobacco products, including but not limited to members of Plaintiff NATO.

31. Tobacco Manufacturer Plaintiffs enter into contracts with retailers, including retailers in Worcester, that allow the manufacturers to communicate with consumers through, among other things, point-of-sale advertising. Tobacco Manufacturer Plaintiffs provide these retailers with fixtures and point-of-sale advertising to market their tobacco products at retail.

32. Point-of-sale advertising is one of the few means by which the Tobacco Manufacturer Plaintiffs can communicate with adult tobacco consumers. In addition to reinforcing brand equity and loyalty, point-of-sale advertising helps adult tobacco consumers identify and select their product of choice, allows them to distinguish among competing brands, and informs them about price and new product offerings.

33. The Ordinance was enacted on top of numerous other federal and state law restrictions on tobacco marketing and advertising. For example, federal law bans tobacco advertising on television and radio for cigarettes and little cigars, 15 U.S.C. § 1335, and smokeless tobacco, *id.* at § 4402(f). And the Master Settlement Agreement, which Tobacco Manufacturer Plaintiffs entered into with the states in 1998 to resolve litigation, contains further advertising restrictions. The Family Smoking Prevention and Tobacco Control Act of 2009 (the "FSPTCA"), Pub. L. No. 111-31, 123 Stat. 1776 (2009), and related federal regulations, include

yet further restrictions. *See* Pub. L. No. 111-31 at § 102(a), 123 Stat. at 1830; *id.* at § 102(a)(1), (a)(2)(G), 123 Stat. at 1830-33; § 201, 123 Stat. at 1842-1845; *id.* at § 204, 123 Stat. 1846-49.

34. The FSPTCA also required the Food and Drug Administration ("FDA") to reissue, in nearly identical form, the rules regulating tobacco issued by FDA in 1996 that the Supreme Court later invalidated in *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000). 21 U.S.C. § 387a–1(a). The final rule was issued on March 19, 2010. *See* 75 Fed. Reg. 13,225, 13,232 (Mar. 19, 2010) (to be codified at 21 C.F.R. pt. 1140). One of the original 1996 rules directly regulated outdoor tobacco advertising, providing: "No outdoor advertising for cigarettes or smokeless tobacco, including billboards, posters, or placards, may be placed within 1,000 feet of the perimeter of any public playground or playground area in a public park (*e.g.*, a public park with equipment such as swings and see-saws, baseball diamonds, or basketball courts), elementary school, or secondary school." 21 C.F.R. § 897.30(b).

35. Congress specifically did *not* require FDA to reissue this rule due to concerns that it would violate the First Amendment. The basis for these concerns was the Supreme Court's opinion in *Lorillard*, which invalidated an almost identical Massachusetts regulation. Congress instead required FDA to issue a rule to regulate outdoor advertising, but also mandated that the final rule must be "appropriate in light of governing First Amendment case law, including the decision . . . in *Lorillard Tobacco Co. v. Reilly* . . . ." 21 U.S.C. § 387a–1(a)(2)(E).

36. Pursuant to this mandate, on March 19, 2010, FDA issued an Advance Notice of Proposed Rulemaking seeking comments on ideas for regulations and soliciting "data, research, or other information on the regulation of outdoor advertising of [tobacco products]." *Request for Comment on Implementation of the Family Smoking Prevention and Tobacco Control Act*, 75 Fed. Reg. 13,241, 13,241 (Mar. 19, 2010) (to be codified at 21 C.F.R. pt. 1140). FDA

determined that any regulation must be "more narrowly tailored than Section 897.30(b)" to survive First Amendment review. *Id.* at 13,242. Thus, the legislative and executive branches of the federal government already have recognized that a rule less restrictive than the Worcester ordinance violates the First Amendment.

37.     In light of the numerous restrictions placed on tobacco advertising through other channels of communication discussed above in paragraphs 1-33, communications at the point of sale have taken on even greater importance. Due to these extensive restrictions, point-of-sale advertising is one of the few remaining channels through which Tobacco Manufacturer Plaintiffs may communicate with adult tobacco consumers. The Ordinance undermines this channel of communication.

38.     The Ordinance is far broader than the Massachusetts regulation invalidated by the Supreme Court in *Lorillard*. The Massachusetts regulation was limited to tobacco advertising, visible from outside, located within 1,000 feet of a school or playground. In contrast, the Ordinance applies to *all* tobacco advertising, anywhere in the city, that is visible from a public street, park, or school.

39.     On March 29, 2011, Thomas A Briant, Executive Director of NATO, wrote a letter to the City Council explaining why the Ordinance would violate the Constitution. Letter from Thomas A. Briant to David M. Moore (Mar. 29, 2011). In that letter Mr. Briant requested that Mr. Moore, as City Solicitor, explain how the Ordinance could be constitutional, and whether the City Council sought input from retailers. The City responded neither to this letter from NATO nor to repeated attempts from NATO to reach it by email.

40. The City's legislative record does not demonstrate that, on top of the extensive tobacco advertising restrictions currently in place, the Ordinance will directly advance the purpose of materially reducing youth tobacco use.

41. Nor does the City's legislative record demonstrate that numerous and obvious non- and less-speech restrictive alternatives—including but not limited to public health advertising, increased enforcement of age-of-purchase laws, tobacco control programs aimed at addressing the social factors that cause tobacco use, increased taxes, or some combination thereof—would not further any substantial government interest by as much or more than the Ordinance. Therefore the Ordinance is more restrictive of speech than is necessary.

42. If the Ordinance takes effect, Plaintiffs and NATO's members will be prohibited from displaying outdoor tobacco advertisements anywhere in the City, including outdoor advertising permitted by the Master Settlement Agreement. The Ordinance will also ban point-of-sale communications with adult consumers inside the store that are visible from any public street, park, or school.

43. The Ordinance is already harming Plaintiffs and NATO's members, who currently use outdoor advertisements and indoor advertisements that may be visible from the street. Because Plaintiffs may need to conform to the Ordinance in the immediate future, the speech of Plaintiffs and NATO's members is already being chilled. The Ordinance further has caused substantial hardship to Plaintiffs and NATO's members by directly affecting their businesses and constitutional rights.

44. Plaintiffs' allegations in this Complaint are justiciable.

## FIRST COUNT

**Violation of the First Amendment to the United States Constitution as Applied to the States and Their Local Governments through the Due Process Clause of the Fourteenth Amendment**

45. Plaintiffs incorporate and reallege each and every allegation contained in paragraphs 1-44 of this Complaint, as though fully set forth herein.

46. The First Amendment to the United States Constitution provides: "Congress shall make no law . . . abridging the freedom of speech." The First Amendment's free speech guarantees apply to the City by incorporation through the Fourteenth Amendment to the United States Constitution.

47. The Ordinance's ban on all outdoor tobacco advertising and all indoor tobacco advertising if visible from the street violates, both on its face and as applied to Plaintiffs and NATO's members, the First and Fourteenth Amendments to the United States Constitution.

48. Plaintiffs have no adequate remedy at law.

## SECOND COUNT

**Deprivation of Plaintiffs' Federal Civil Rights in Violation of 42 U.S.C. § 1983**

49. Plaintiffs incorporate and reallege each and every allegation contained in paragraphs 1-48 of this Complaint as though fully set forth herein.

50. By enacting and threatening to enforce the Ordinance, Defendants have unlawfully and substantially deprived Plaintiffs and NATO's members of rights secured by the United States Constitution and federal law.

51. Defendants are "persons" under 42 U.S.C. § 1983 who have acted under color of state law to deprive Plaintiffs and NATO's members of rights secured by the United States Constitution and federal law.

52. Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

An actual controversy has arisen between the parties entitling Plaintiffs to declaratory and injunctive relief.

WHEREFORE, Plaintiffs pray that this Court:

(A) enter a preliminary injunction, pending final resolution of this action, enjoining Defendants from taking any action to enforce any part of the Ordinance's advertising ban;

(B) enter a judgment declaring the Ordinance's advertising ban to be an unconstitutional abridgement of Plaintiffs' free speech rights under the First and Fourteenth Amendment to the United States Constitution;

(C) enter a permanent injunction enjoining Defendants from enforcing any part of the Ordinance's advertising ban; and

(D) grant Plaintiffs such additional or different relief as it deems just and proper, including an award of reasonable attorneys' fees and the costs of this action.

Dated: June 17, 2011

                            Respectfully submitted,

                            <u>/s/ Traci L. Lovitt</u>

Traci L. Lovitt BBO# 680619
JONES DAY
100 High Street
22nd Floor
Boston, MA 02110-1781
(617) 960-3939
tlovitt@jonesday.com

*Of Counsel*
Noel J. Francisco (*pro hac vice* admission forthcoming)
Craig I. Chosiad BBO# 672360 (admission forthcoming)
51 Louisiana Avenue, NW
Washington, DC 20001-2113

***Attorneys for Philip Morris USA Inc. and National Association of Tobacco Outlets, Inc.***

/s/ Mark K. Schonfeld

Mark K. Schonfeld BBO # 553159
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-2433
mschonfeld@gibsondunn.com

*Of Counsel*
Miguel A. Estrada (*pro hac vice* admission forthcoming)
Michael J. Edney (*pro hac vice* admission forthcoming)
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, NW
Washington, DC 20036

***Attorneys for R.J. Reynolds Tobacco Company***

/s/ Traci L. Lovitt

Traci L. Lovitt BBO# 680619
JONES DAY
100 High Street
22nd Floor
Boston, MA 02110-1781
(617) 960-3939
tlovitt@jonesday.com

*Of Counsel*
Noel J. Francisco (*pro hac vice* admission forthcoming)
Craig I. Chosiad BBO# 672360 (admission forthcoming)
51 Louisiana Avenue, NW
Washington, DC  20001-2113

**Attorneys for Lorillard Tobacco Company**

/s/ A. John Pappalardo

A. John Pappalardo, BBO #388760
Victor H. Polk, Jr., BBO #546099
GREENBERG TRAURIG, LLP
One International Place
Boston, MA  02110
(617) 310-6000
pappalardoj@gtlaw.com
polkv@gtlaw.com

*Of Counsel*
Alan Mansfield (*pro hac vice* admission forthcoming)
Stephen L. Saxl (*pro hac vice* admission forthcoming)
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, NY 10166

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing document was this 17th of June, 2011, served upon the following by certified mail:

Mariann Castelli Hier, Treasurer
City of Worcester
City Hall Room 203
455 Main Street
Worcester, MA 01608

B. Dale Magee, Commissioner
Division of Public Health
City of Worcester
25 Meade Street
Worcester, MA 01610

B. Dale Magee, Commissioner
Division of Public Health
City of Worcester
25 Meade Street
Worcester, MA 01610

Michael V. O'Brien, City Manager
City of Worcester
City Hall Room 309
455 Main Street
Worcester, MA 01608

Martha Coakley, Attorney General
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02108 -1518

David M. Moore, City Solicitor
City of Worcester
City Hall Room 301
455 Main Street, Worcester, MA 01608

                                            /s/ Traci L. Lovitt
                                            Traci L. Lovitt