# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### CENTRAL DIVISION

| | |
|---|---|
| _____ * | |
| NATIONAL ASSOCIATION OF TOBACCO * | |
| OUTLETS, INC.; R.J. REYNOLDS TOBACCO * | |
| COMPANY; PHILIP MORRIS USA INC.; * | |
| LORILLARD TOBACCO COMPANY, * | |
| * | |
| Plaintiffs, * | Civil Action No. |
| * | 4:11−CV−40110−DPW |
| v. * | |
| * | |
| CITY OF WORCESTER, Massachusetts; * | |
| DIVISION OF PUBLIC HEALTH of Worcester, * | |
| Massachusetts; B. DALE MAGEE, in his official * | |
| capacity as Commissioner of Public Health of * | |
| Worcester, Massachusetts; MICHAEL V. * | |
| O'BRIEN, in his official capacity as City Manager * | |
| of Worcester, Massachusetts, * | |
| * | |
| Defendants. * | |
| _____ * | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND MOTION FOR SUMMARY JUDGMENT, AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ii

INTRODUCTION .............................................................................................................. 1

I.     THE ORDINANCE VIOLATES BINDING SUPREME COURT PRECEDENT........... 3

      A.    The Ordinance Is Unconstitutional Under *Lorillard*. ........................................... 3

      B.    Worcester's Attempt To Distinguish *Lorillard* Fails At Every Level. .................. 6

II.    THE ORDINANCE ALSO FAILS THE THIRD AND FOURTH PRONGS OF
       *CENTRAL HUDSON*. ..................................................................................................... 9

      A.    Worcester Has Not Demonstrated That The Ordinance Will Cause A
           "Material" Or "Significant" Reduction In Adult Tobacco Use. ........................... 9

      B.    Worcester Has Not Demonstrated That The Ordinance Is Narrowly
           Tailored. ............................................................................................................ 13

           1.    Worcester Did Not "Carefully Calculate" The Burdens And
                Benefits Of The Speech Ban. ................................................................. 14

           2.    Worcester Has Not Demonstrated That Obvious Less Restrictive
                Alternatives Would Be Less Effective Than The Ordinance. ................. 17

III.   PLAINTIFFS' EXPERT DECLARATIONS FURTHER DEMONSTRATE WHY
       PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION AND
       SUMMARY JUDGMENT AND WHY WORCESTER IS NOT. ................................. 19

CONCLUSION ................................................................................................................ 20

CERTIFICATE OF SERVICE

APPENDIX A

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*44 Liquormart, Inc. v. Rhode Island*,
   517 U.S. 484 (1996) ............................................................................................ *passim*

*Artichoke Joe's Cal. Grand Casino v. Norton*,
   353 F.3d 712 (9th Cir. 2003) ............................................................................. 12

*Bellsouth Telecomms., Inc. v. Farris*,
   542 F.3d 499 (6th Cir. 2008) ............................................................................. 18

*Capital Broadcasting Co. v. Mitchell*,
   333 F. Supp. 582 (D.D.C. 1971),
   *affirmed sub. nom. Capital Broadcasting Co. v. Kleindienst*, 405 U.S. 1000 (1972) ............. 12

*Castillo v. United States*,
   530 U.S. 120 (2000) ............................................................................................. 4

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*,
   447 U.S. 557 (1980) ...................................................................................... 9, 10, 12, 17

*City of Cincinnati v. Discovery Network, Inc.*,
   507 U.S. 410 (1993) .......................................................................................... 15, 17

*Clifton v. FEC*,
   114 F.3d 1309 (1st Cir. 1997) ............................................................................ 13

*Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*,
   412 U.S. 94 (1973) ............................................................................................. 12

*Consol. Edison Co. v. Pub. Serv. Comm'n*,
   447 U.S. 530 (1980) .......................................................................................... 13, 15

*Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*,
   518 U.S. 727 (1996) ............................................................................................ 13

*Edenfield v. Lane*,
   507 U.S. 761 (1993) ..................................................................................... 2, 9, 10, 13

*FCC v. Fox Television Stations, Inc.*,
   129 S. Ct. 1800 (2009) ........................................................................................ 12

*FDA v. Brown & Williamson Tobacco Corp.*,
   529 U.S. 120 (2000) ............................................................................................. 5

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Fox Television Stations, Inc.v. FCC,*
    613 F.3d 317 (2d Cir. 2010), *cert. granted,* 131 S. Ct. 3065 (2011) ......................................12

*Greater New Orleans Broad. Ass'n v. United States,*
    527 U.S. 173 (1999) ...............................................................................................................9

*John Donnelly & Sons v. Campbell,*
    639 F.2d 6 (1st Cir. 1980) .....................................................................................................10

*Linmark Assocs. v. Twp. of Willingboro,*
    431 U.S. 85 (1977) ................................................................................................................15

*Lorillard Tobacco Co. v. Reilly,*
    533 U.S. 525 (2001) ...................................................................................................... *passim*

*National Tobacco Co., LP v. City of Worcester,*
    No. 11-CV-40119 (D. Mass Sept. 30, 2011) .........................................................................1

*Pearson v. Shalala,*
    164 F.3d 650 (D.C. Cir. 1999) ..............................................................................................12

*Pitt News v. Pappert,*
    379 F.3d 96 (3d Cir. 2004) ....................................................................................................18

*Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico,*
    478 U.S. 328 (1986) .........................................................................................................11, 12

*Red Lion Broadcasting Co. v. FCC,*
    395 U.S. 367 (1969) .........................................................................................................12, 13

*Reno v. Am. Civil Liberties Union,*
    521 U.S. 844 (1997) ..............................................................................................................13

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.,*
    490 U.S. 477 (1989) ................................................................................................................4

*Rubin v. Coors Brewing Co.,*
    514 U.S. 476 (1995) ..............................................................................................................18

*Sorrell v. IMS Health Inc.,*
    131 S. Ct. 2653 (2011) .................................................................................................. *passim*

*Telecomm. Research & Action Ctr. v. FCC,*
    801 F.2d 501 (D.C. Cir. 1986) ..............................................................................................12

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Thompson v. W. States Med. Ctr.*,
535 U.S. 357 (2002)...................................................................................7, 10, 17

*Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*,
460 U.S. 533 (1983) (per curiam)...........................................................................4

*Turner Broad. Sys., Inc. v. FCC*,
512 U.S. 622 (1994)...............................................................................................13

*U.S. West, Inc. v. FCC*,
182 F.3d 1224 (10th Cir. 1999) .............................................................................10

*United States v. O'Brien*,
130 S. Ct. 2169 (2010)............................................................................................4

*United States v. O'Brien*,
542 F.3d 921 (1st Cir. 2008)................................................................................4, 6

*United States v. Sampson*,
486 F.3d 13 (1st Cir. 2007)......................................................................................4

*United States v. Stevens*,
130 S. Ct. 1577 (2010)...........................................................................................15

*Virginia Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
425 U.S. 748 (1976).............................................................................................7, 8

*Wine & Spirits Retailers, Inc. v. Rhode Island*,
481 F.3d 1 (1st Cir. 2007)......................................................................................10

*Yes for Life PAC v. Webster*,
84 F. Supp. 2d 150 (D. Me. 2000) .........................................................................13

*Zauderer v. Office of Disciplinary Counsel*,
471 U.S. 626 (1985)...............................................................................................17

## STATUTES

52 Stat. 1040, as amended, 21 U.S.C. § 301 *et seq.*..................................................5

15 U.S.C. § 1334.........................................................................................................6

21 U.S.C. § 387a-1......................................................................................................5

940 Mass. Code Regs. § 21.04 (2000).......................................................................3

## TABLE OF AUTHORITIES
(continued)

Page(s)

Worcester, Mass., Ordinance Further Regulating the Sale and Advertising of Tobacco
Products (May 10, 2011) ................................................................................. *passim*

### OTHER AUTHORITIES

61 Fed. Reg. 44,396 (Aug. 28, 1996) ........................................................................ 5, 10

75 Fed. Reg. 13,241 (Mar. 19, 2010) ......................................................................... 5, 6

Center for Tobacco-Free Kids, *A Broken Promise to Our Children: The 1998 State
Tobacco Settlement Twelve Years Later* (Nov. 17, 2010) at 43-44 ......................... 20

http://www.lorillard.com/about-us/legislation/summary-of-maiser-settlement-
agreement/#more-30. ........................................................................................... 16

## INTRODUCTION

This case is squarely controlled by *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001), which entitles the Plaintiffs to a preliminary injunction and summary judgment as a matter of law.  In *Lorillard*, the Supreme Court invalidated a Massachusetts outdoor advertising ban that was *narrower* than the Ordinance.  Worcester seeks to avoid this binding *constitutional* holding by arguing about an intervening change in *statutory* law.  According to Worcester, a change to the preemption provision in the Federal Cigarette Labeling and Advertising Act ("Labeling Act") made by the Family Smoking Prevention and Tobacco Control Act ("FSPTCA") "effectively reversed the *Lorillard Tobacco* decision,"[1] because prior to the enactment of the FSPTCA, the Labeling Act barred Massachusetts from advancing an interest in reducing adult tobacco use.  This is wrong and irrelevant:  The First Amendment, not the Labeling Act, barred Massachusetts from advancing an interest in reducing adult tobacco use in *Lorillard*.  Nothing has altered that holding in the intervening decade since *Lorillard* was decided.  Thus, *Lorillard* remains good law, and squarely controls this case.

Moreover, *Lorillard* and numerous other binding Supreme Court cases separately foreclose Worcester's argument that it may prohibit truthful, non-misleading speech about a lawful product out of fear that that speech will cause adult consumers to purchase it.  As the Court held in *Lorillard*, "so long as the sale and use of tobacco is lawful for adults, the tobacco industry has a protected interest in communicating information about its products and adult customers have an interest in receiving that information."  533 U.S. at 571.  Or as the Court more recently held in *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653 (2011):  "[T]he State may not seek to remove a popular but disfavored product from the marketplace by prohibiting truthful, non-misleading advertisements that contain impressive endorsements or catchy jingles.  That the State finds expression too persuasive does not permit it to quiet the speech or burden its messengers."  *Id.* at 2671.

---

[1] Defs.' Opp. to Pls.' Mot. for Prelim. Inj. in *National Tobacco Co., LP v. City of Worcester*, No. 11-CV-40119 (D. Mass.), Docket #13 (Sept. 30, 2011) [hereinafter Cigar Wrapper Opp.] at 24.

In any event, Worcester has not even remotely carried its burden of proving both (1) that the Ordinance "will in fact" reduce adult tobacco use "to a material degree," *Edenfield v. Lane*, 507 U.S. 761, 771 (1993), and (2) that the Ordinance is narrowly tailored to achieve that goal, in that Worcester's City Council "carefully calculate[d] the costs and benefits associated with the burden on speech imposed" by the Ordinance, *Lorillard*, 533 U.S. at 561 (internal quotation marks omitted). "[T]hese standards ensure not only that the State's interests are proportional to the resulting burdens placed on speech but also that the law does not seek to suppress a disfavored message." *Sorrell*, 131 S. Ct. at 2668. Here, even assuming the First Amendment permitted Worcester to ban speech to *adults*—and it does not—the City has put forward no evidence that the advertising ban will cause any material reduction in adult tobacco use. Nor has it demonstrated that the ban is narrowly tailored to that interest. Instead, the Ordinance relies on findings limited to *youth* tobacco use—an interest that even Worcester concedes cannot justify the Ordinance under *Lorillard*. The Ordinance thus reflects nothing more than Worcester's attempt "to suppress a disfavored message." *Id.*

Finally, even apart from the purely legal bases for invalidating the Ordinance discussed above, Plaintiffs' expert declarations further demonstrate how the Ordinance will not reduce tobacco use and, in addition, how Worcester ignored numerous, obvious non-speech restrictive or less-speech restrictive alternatives that would better advance its goal. In the unlikely event that the Court needs to consider such evidence, these declarations further show why the Ordinance is irreconcilable with the First Amendment. At a minimum, they foreclose summary judgment for Worcester.

Accordingly, for the reasons explained in Plaintiffs' opening memorandum and further explained herein, this Court should grant Plaintiffs' Motion for Preliminary Injunction and their Motion for Summary Judgment, and should deny Defendants' Motion for Summary Judgment.[2]

---

[2] At a scheduling conference on August 11, 2011, the Court requested that the parties confer about providing a vehicle to resolve this action on a dispositive motion, if possible. Accordingly, pursuant to the parties' agreement, *see* (Joint Mot. for Order to set Briefing, Decl., & Hr'g Sched., Docket #27), Plaintiffs have now moved for summary

## I.      THE ORDINANCE VIOLATES BINDING SUPREME COURT PRECEDENT.

This case is squarely controlled by *Lorillard*, which invalidated a Massachusetts regulation that is materially indistinguishable from the Ordinance.  Worcester's sole argument is that *Lorillard* is no longer good law, because prior to the enactment of the FSPTCA, Massachusetts was barred by federal statutory law from advancing an additional interest in reducing *adult* tobacco use.  This is clearly wrong.  The FSPTCA did not even arguably overrule *Lorillard*'s First Amendment holding.  In any event, the City's additional interest in reducing adult tobacco use is also foreclosed by a long line of Supreme Court precedent that squarely prohibits paternalistic laws that "'seek to keep people in the dark for what the government perceives to be their own good.'"  *Sorrell*, 131 S. Ct. at 2671 (quoting *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 503 (1996) (plurality op.)).

### A.      The Ordinance Is Unconstitutional Under *Lorillard*.

In *Lorillard*, the Supreme Court invalidated a Massachusetts regulation that prohibited outdoor advertising within 1,000 feet of a school or playground.  In particular, it banned:

> Outdoor advertising, including . . . advertising from within a retail establishment that is . . . visible from the outside of the establishment, in any location that is within a 1,000 foot radius of any public playground, playground area in a public park, elementary school or secondary school.

*Lorillard*, 533 U.S. at 534-35 (quoting 940 Mass. Code Regs. § 21.04(5)(a) (2000)).  The Ordinance at issue here prohibits far more advertising, including:

> any advertising that promotes or encourages the sale or use of cigarettes, blunt wraps or other tobacco products in any location where any such advertising can be viewed from any street or park shown on the Official Map of the city or from any property containing a public or private school or property containing an educational institution.

Ordinance § 5.  As the foregoing makes clear, whereas the Massachusetts regulation in *Lorillard* banned outdoor tobacco advertising within 1,000 feet of a school or playground, the Worcester Ordinance bans outdoor tobacco advertising *anywhere* in the City of Worcester, including advertising

---

judgment, in addition to moving for a preliminary injunction, should the Court choose to rule on a dispositive motion at this stage.

that is merely *visible* from a school or playground.  Thus, the Worcester Ordinance is indistinguishable from the Massachusetts regulation in all respects but one:  It is even more restrictive of speech than the regulation that *Lorillard* held was incompatible with the First Amendment. Worcester does not and could not contest this fact in its brief.

*Lorillard* is the beginning and the end of this case.  Lower courts are obliged to adhere to "the clear import" of the Supreme Court's decisions.  *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 534 (1983) (per curiam).  Thus, once the Supreme Court has decided an issue, lower courts must "follow the case" and "leav[e] to [the Supreme] Court the prerogative of overruling its own decisions," *United States v. Sampson*, 486 F.3d 13, 20 (1st Cir. 2007) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)) (alterations in original).  For example, in *United States v. O'Brien*, 542 F.3d 921, 926 (1st Cir. 2008), the First Circuit refused to distinguish a prior Supreme Court decision on the basis of minor differences in the statutes being analyzed, because "most of the reasoning offered" in the previous Supreme Court decision applied "with almost equal force" to the case before the court.  *Id.*  As the First Circuit held, it is the "prerogative" of the Supreme Court, and not lower courts, to "reconsider[] or narrowly distinguish[]" the Court's prior holdings.  *Id.  O'Brien*'s subsequent appellate history, moreover, illustrates the wisdom of its approach, since the Supreme Court affirmed the First Circuit's holding based on the reasoning in its prior decision, notwithstanding the differences identified in the Court of Appeals.  *See United States v. O'Brien*, 130 S. Ct. 2169, 2175-80 (2010) (discussing *Castillo v. United States*, 530 U.S. 120 (2000)).

Here, the regulation at issue in *Lorillard* is indistinguishable from the Ordinance in any material respect.  Indeed, both Congress in enacting the FSPTCA, and the Food and Drug Administration ("FDA") in implementing it, expressly acknowledged that restrictions like Worcester's are *unconstitutional*, concluding that *Lorillard* forecloses an outdoor advertising ban that—like the

Ordinance—is as broad or broader than the one invalidated in *Lorillard*.  In particular, the FSPTCA directs the FDA to reissue a series of 1996 regulations on tobacco marketing that the Supreme Court had previously invalidated as exceeding the FDA's regulatory authority.[3]  However, Congress expressly directed the FDA *not* to re-issue verbatim the 1996 regulation that banned tobacco advertising within 1,000 feet of a school or playground, since that regulation was indistinguishable from the one invalidated in *Lorillard*.  Instead, Congress ordered the FDA to modify the 1,000-foot rule "in light of governing First Amendment case law, including the decision of the Supreme Court of the United States in *Lorillard Tobacco Co. v. Reilly*."  21 U.S.C. § 387a-1(a)(2)(E).  The FDA, in turn, made clear that "any proposed restrictions would be *more* narrowly tailored" than the earlier 1,000-foot rule, "[a]s *required* by *Lorillard* and the governing First Amendment case law."  75 Fed. Reg. 13,241, 13,242 (Mar. 19, 2010) (emphases added).  The FDA has since announced that it is considering regulations that are narrower than the regulation struck down in *Lorillard* and narrower than the Ordinance.[4]

---

[3] In 1996, the FDA asserted regulatory authority over tobacco products and thereafter promulgated a series of tobacco marketing restrictions, including a ban on outdoor advertising within 1,000 feet of a school or playground. Regulations Restricting the Sale and Distribution of Cigarettes and Smokeless Tobacco to Protect Children and Adolescents, 61 Fed. Reg. 44,396, 44,399 (Aug. 28, 1996).  In *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000), the Supreme Court invalidated the 1996 regulations because the FDA did not have statutory authority to regulate tobacco products.  *Id.* at 159-60.  In 2009, Congress enacted the FSPTCA, which expressly provided the FDA with such regulatory authority and directed it to re-promulgate most of the 1996 regulations.  *See* 52 Stat. 1040, as amended, 21 U.S.C. § 301 *et seq.*

[4] In its advance notice of proposed rulemaking, the FDA considered several alternatives that were narrower than the regulation struck down in *Lorillard*:

> The agency is considering several options, including a regulation proposing to (1) Prohibit or otherwise limit billboards located within 1,000 feet of any elementary or secondary school (k-12) and (2) prohibit or otherwise limit large signs or collections of advertisements greater than 14 square feet at retail establishments located in close proximity to any elementary or secondary school (*e.g.*, within 350 feet or approximately one city block).  As required by *Lorillard* and the governing First Amendment case law, any proposed restrictions would be more narrowly tailored than § 897.30(b), as published in 1996.  The agency is considering whether the restrictions under consideration in this advance notice of proposed rulemaking that would differentiate between large and small advertisements would appropriately tailor the rule.  For example, we are considering tailoring the distance requirement by leaving the 1,000 foot restriction for the largest and most prominent advertisements (billboards) and narrowing the distance to 350 feet (approximately one city block) for smaller advertisements that are not as prominent.  Under this approach, the restrictions would limit advertising near schools only, rather than schools and playgrounds.

As this demonstrates, *Lorillard* squarely controls this case.  Since *Lorillard* held that a regulation banning outdoor tobacco advertising within 1,000 feet of a school or playground violated the First Amendment, it follows *a fortiori* that a law banning *all* outdoor tobacco advertising does too.  It is the "prerogative" of the Supreme Court, not this one, to either "reconsider[] or narrowly distinguish[]" *Lorillard*'s clear holding.  *O'Brien*, 542 F.3d at 926.  For this reason alone, this Court should declare that the Ordinance is unconstitutional.

### B.      Worcester's Attempt To Distinguish *Lorillard* Fails At Every Level.

Worcester essentially concedes that the Ordinance is indistinguishable from the Massachusetts regulation invalidated in *Lorillard*.  Worcester argues, however, that "the then-applicable federal preemption provision" "limited [Massachusetts's interest in *Lorillard*] to protecting minors," Cigar Wrapper Opp. at 24, and that the FSPTCA has now removed that federal statutory bar.  Thus, Worcester argues, stunningly, that "Congress has effectively reversed the *Lorillard Tobacco* decision['s]" First Amendment holding.  *Id.* at 26.  *See also* Defs.' Opp. to Pls.' Mot. for Prelim. Inj. ("Opp.") at 8-9 ("because of the repeal of the federal pre-emption contained in the Tobacco Control Act, [*Lorillard*] is now entirely distinguishable from the case at bar").  This is both wrong and irrelevant.

*First*, it is wrong because the FSPTCA's changes to the Labeling Act's statutory preemption provision are entirely irrelevant to *Lorillard*'s First Amendment holding, which struck down a regulation that was *not* subject to the preemption provision *at all*.[5]  As the Supreme Court made crystal clear at the outset of its First Amendment discussion, because "the [Labeling Act's] pre-

---

75 Fed. Reg. at 13,242.

[5] The FSPTCA amended, but did not "repeal," the preemption provision applicable to cigarette advertising.  Prior to the enactment of the  FSPTCA, the preemption provision provided that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with" federal law. 15 U.S.C. § 1334(b).  The FSPTCA left this provision entirely intact, but added that state and local governments could "impos[e] specific bans or restrictions on the time, place, and manner, but not content, of the advertising or promotion of any cigarettes."  15 U.S.C. § 1334(c).

emption provision only applies to cigarettes, . . . we must evaluate the smokeless tobacco and cigar petitioners' First Amendment challenges to the State's outdoor . . . advertising regulations." 533 U.S. at 553.  Consequently, the preemption provision had no bearing at all on *Lorillard*'s First Amendment analysis, and Massachusetts was entirely free to advance any interest it wanted to in defense of its regulation—including an interest in reducing adult tobacco use.  Indeed, Worcester's assertion that the FSPTCA "effectively reversed the *Lorillard Tobacco* decision," Cigar Wrapper Opp. at 26, is irreconcilable with the FSPTCA itself, which explicitly directs the FDA *not* to enact a regulation— like the Ordinance—that is *broader* than the one struck down in *Lorillard*.  *See supra* at I.A.  The FSPTCA cannot both expressly acknowledge *Lorillard*'s continued vitality and at the same time effectively overrule it.[6]

*Second*, wholly apart from the FSPTCA, Worcester's assertion that it may prohibit truthful, non-misleading tobacco advertising in order to prevent *adults* from purchasing tobacco products is irreconcilable with a long line of Supreme Court holdings, including *Lorillard* itself.  Indeed, if, as *Lorillard* held, a broad outdoor advertising ban cannot be justified by an interest in prohibiting illegal *youth* tobacco use, it is impossible to understand how it could be justified by an interest in preventing *adults* from buying a product that it is entirely lawful for them to purchase and use.  That is precisely why the Supreme Court has repeatedly held that the government may not "prevent[] the dissemination of truthful commercial information in order to prevent members of the public from making bad decisions with the information."  *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 374 (2002).

This is not a novel principle.  To the contrary, the Supreme Court announced it thirty-five years ago in *Virginia Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976):

---

[6] Worcester's discussion of the scope of state police power, (Opp. at 11), is likewise irrelevant.  The cases it cites involve restrictions on *conduct* (*i.e.*, requiring vaccinations, prohibiting smoking in certain enclosed spaces), not *speech;* they are therefore not governed by the First Amendment.

> There is, of course, an alternative to this highly paternalistic approach.  That alternative is to assume that this information is not in itself harmful, that people will perceive their own best interests if only they are well enough informed, and that the best means to that end is to open the channels of communication rather than to close them. . . .  But the choice among these alternative approaches is not ours to make or the Virginia General Assembly's.  It is precisely this kind of choice, between the dangers of suppressing information, and the dangers of its misuse if it is freely available, that the First Amendment makes for us.

*Id.* at 770.  And it reiterated this principle in *Sorrell*, its most recent commercial speech decision:

> [T]he State may not seek to remove a popular but disfavored product from the marketplace by prohibiting truthful, nonmisleading advertisements that contain impressive endorsements or catchy jingles.  That the State finds expression too persuasive does not permit it to quiet the speech or burden its messengers.

131 S. Ct. at 2671.  Indeed, on the basis of this principle, *Lorillard* itself held that "so long as the sale

and use of tobacco is lawful for adults, the tobacco industry has a protected interest in communicating

information about its products and adult customers have an interest in receiving that information."

533 U.S. at 571; *see also Sorrell*, 131 S. Ct. at 2670 ("[T]he fear that speech might persuade provides

no lawful basis for quieting it."); *id.* at 2670-71 ("[T]he 'fear that people would make bad decisions if

given truthful information' cannot justify content-based burdens on speech.") (quoting *W. States Med.*

*Ctr.*, 535 U.S. at 374); *id.* at 2671 ("'The First Amendment directs us to be especially skeptical of

regulations that seek to keep people in the dark for what the government perceives to be their own

good.'") (quoting *44 Liquormart*, 517 U.S. at 503 (plurality opinion)).  Worcester's attempt to

technically distinguish these myriad Supreme Court cases, *see* (Opp. at 11-14), ignores the fact that

this basic First Amendment principle is the very bedrock of the Supreme Court's commercial speech

jurisprudence.

In short, Worcester's attempt to avoid *Lorillard*'s clear holding fails at every level.  The

FSPTCA, a congressional statute, of course did not overrule *Lorillard*'s constitutional holding.  Thus,

nothing prevented Massachusetts from arguing that it could ban tobacco marketing in order to prevent

adults from purchasing lawful tobacco products—except for the First Amendment, which likewise

bars Worcester from enacting paternalistic laws that prohibit truthful, non-misleading speech about

lawful products in order to prevent adult consumers from making "bad" decisions. This Court should therefore hold that the Ordinance is irreconcilable with the First Amendment as interpreted and applied in *Lorillard* and numerous controlling Supreme Court decisions.

## II.   THE ORDINANCE ALSO FAILS THE THIRD AND FOURTH PRONGS OF *CENTRAL HUDSON*.

As the foregoing demonstrates, the Ordinance is irreconcilable with binding Supreme Court precedent. This alone requires the Court to grant Plaintiffs' motion for preliminary injunction and motion for summary judgment, and to deny Defendants' motion for summary judgment. But even apart from this controlling case law, Worcester bears the "burden to justify its content-based law as consistent with the First Amendment." *Sorrell*, 131 S. Ct. at 2667. Here, even Worcester concedes that *Lorillard* would foreclose the Ordinance if it were based solely on reducing youth tobacco use. Thus, the only potentially relevant question is the effect of the Ordinance on reducing adult tobacco use. Under the third and fourth prongs of *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980), Worcester therefore must prove that the Ordinance's speech ban (1) will result in a *significant* reduction in such use, and (2) is narrowly tailored to that goal. Here, Worcester has done neither. Instead, it relies almost entirely on evidence related to *youth* tobacco use—evidence that is obviously irrelevant to its newfound interest in manipulating the lawful purchasing decisions of *adults*.

### A.   Worcester Has Not Demonstrated That The Ordinance Will Cause A "Material" Or "Significant" Reduction In Adult Tobacco Use.

Under *Central Hudson*'s third prong, Worcester bears the burden of proving that the Ordinance "will in fact alleviate" adult tobacco use "to a material degree." *Edenfield*, 507 U.S. at 771. "'This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.'" *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 188 (1999) (quoting *Edenfield*, 507 U.S. at 770-71). Thus,

Worcester must demonstrate that the Ordinance will "*significantly* serve [its] interest" in reducing

adult tobacco use.  *John Donnelly & Sons v. Campbell*, 639 F.2d 6, 8 (1st Cir. 1980) (emphasis

added); *see also, e.g.*, *44 Liquormart*, 517 U.S. at 506 (the government must show "that its speech

prohibition will *significantly* reduce marketwide consumption").[7]  Worcester has not remotely carried

this burden.

    *First*, the only evidence that Worcester cites are findings that it claims were made by the FDA

and Congress in support of the federal marketing restrictions in the FSPTCA.  (*See* Opp. at 16-17.)

These findings, however, have nothing to do with *adult* tobacco use; instead, they study only the link

between advertising and *youth* tobacco use.  Indeed, every one of the FDA findings that Worcester

cites in its brief is related to "youth" use.[8]  So too Congress's findings in enacting the FSPTCA.  But

one would not know this from reading the Worcester Ordinance.  The City Council purports to

"incorporate Congress's findings"—but in fact *alters* them to reference "adults."  For example,

Worcester Ordinance's Finding #9 supposedly "incorporate[s]" FSPTCA finding #25:

"Comprehensive advertising restrictions will have a positive effect on the smoking rates of young

---

[7] Worcester argues that "*44 Liquormart* did not articulate a new standard for the third prong of the *Central Hudson* test" because no opinion "commanded a majority and none speak[s] for the Court."  (Opp. at 18.)  Plaintiffs agree that *44 Liquormart* did not announce a "new standard."  Instead, it recognized, as the Supreme Court had previously held, that the government is required to demonstrate that a speech restriction advances its interest "to a *material* degree," *Edenfield*, 507 U.S. at 771 (emphasis added).  But Worcester is wrong to belittle *44 Liquormart* as a plurality opinion.  As discussed below, the Justices uniformly agreed on the proper standard for evaluating a commercial speech restriction, including that the government had the burden of producing evidence that the speech restriction would in fact materially advance the government's asserted interest.  *See infra* at 12.  Moreover, the Supreme Court, including in its most recent 6-3 decision in *Sorrell*, repeatedly invokes the plurality opinion.  *See, e.g.*, 131 S. Ct. at 2669, 2671, 2672; *see also W. States Med. Ctr.*, 535 U.S.at 372 (citing *44 Liquormart*); *Wine & Spirits Retailers, Inc. v. Rhode Island*, 481 F.3d 1, 6 (1st Cir. 2007) (citing *44 Liquormart*).  Lower courts likewise have generally regarded Justice Stevens' position as "the narrowest majority holding" in that case.  *U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1233 n.5 (10th Cir. 1999).

[8] *See* Opp. at 16 (citing 61 Fed. Reg. at 44,494 ("Based on the foregoing, FDA finds that the international experience provides empirical evidence that restrictions on tobacco advertising, when given appropriate scope and when fully implemented, will reduce cigarette and smokeless tobacco use among *children and adolescents under the age of 18.*" (emphasis added))); *id.* (citing 61 Fed. Reg. at 44,466 ("FDA tentatively asserted that a preponderance of the quantitative and qualitative studies of cigarette advertising suggested: (1) A causal relationship between tobacco advertising and tobacco use by *young people*, and (2) a positive effect of stringent advertising measures on smoking rates and on *youth tobacco use.*" (emphases added))); *id.* at 17 (citing reports showing "advertising was an important factor in *young people's tobacco use*, and . . . restrictions on advertising must be part of any meaningful approach to reducing smoking and smokeless tobacco use among *young people*." (emphases added)).

people *and adults*."  (Opp. at 17 (emphasis added)).  But the words "and adults" do not appear in

FSPTCA finding #25.  *See* FSPTCA Finding # 25 ("Comprehensive advertising restrictions will have

a positive effect on the smoking rates of young people.").  Likewise, Worcester Order Finding #4,

which supposedly incorporates FSPTCA finding #6, provides:  "Because past efforts to restrict

advertising and marketing of tobacco products have failed adequately to curb tobacco use by

adolescents *and adults*, comprehensive restrictions . . . are needed . . . ." (emphasis added).  Again,

however, the words "and adults" are nowhere to be found in FSPTCA finding #6—they were added

by Worcester.  *See* FSPTCA finding #6 ("Because past efforts to restrict advertising and marketing of

tobacco products have failed adequately to curb tobacco use by adolescents, comprehensive

restrictions . . . are needed.").  Worcester obviously cannot meet its evidentiary burden under the First

Amendment by manufacturing findings out of whole cloth.  The FDA and Congressional findings

Worcester cites, therefore, provide no support at all for its assertion that the Ordinance will

significantly reduce *adult* tobacco use.

  *Second*, Worcester cannot fill this evidentiary void by resorting to its view of "common

sense."  (Opp. at 18.)  Established law requires that it put forth *evidence*.  *See supra* at 9.  Worcester

says the Supreme Court's decision in *Posadas de Puerto Rico Associates v. Tourism Co. of Puerto

Rico*, 478 U.S. 328 (1986), eliminates this evidentiary requirement.  (Opp. at 15-16.)  In *44

Liquormart*, however, the rationale of *Posadas* was rejected not just by the controlling plurality

opinion, but by almost *every member* of the Court.  Thus, the plurality, joined by Justices Stevens,

Kennedy, Ginsburg, and Thomas, squarely held "that *Posadas* erroneously performed the First

Amendment analysis."  *44 Liquormart,* 517 U.S. at 509.  Likewise, in her separate opinion, Justice

O'Connor, joined by Chief Justice Rehnquist and Justices Souter and Breyer, explained that while it

was "true that *Posadas* accepted as reasonable, without further inquiry, Puerto Rico's assertions that

the regulations furthered the government's interest," "[s]ince *Posadas*, . . . this Court has examined

more searchingly the State's professed goal, and the speech restriction put into place to further it, before accepting a State's claim that the speech restriction satisfies First Amendment scrutiny"; she then concluded that "[t]he closer look that we have required since *Posadas* comports better with the purpose of the analysis set out in *Central Hudson*." *Id.* at 531-32 (O'Connor, J., concurring in the judgment) (citing cases). *Posadas* and the analysis it supports, therefore, is simply no longer good law. *See Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712, 737 n.20 (9th Cir. 2003) ("[T]he Court disavowed *Posadas*' First Amendment holding . . . ."); *Pearson v. Shalala*, 164 F.3d 650, 658 (D.C. Cir. 1999) ("[T]he Supreme Court expressly disapproved of that aspect of *Posadas* . . . .").

Worcester's reliance on *Capital Broadcasting Co. v. Mitchell*, 333 F. Supp. 582 (D.D.C. 1971), *affirmed sub. nom. Capital Broadcasting Co. v. Kleindienst*, 405 U.S. 1000 (1972), (Opp. at 19-20), is equally misplaced. That case applied the First Amendment standard of *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367 (1969), which establishes far less robust First Amendment protections for broadcast media licensed by the Federal Communications Commission. *See id.* at 386 ("[D]ifferences in the characteristics of new media justify differences in the First Amendment standards applied to them."); *Capital Broadcasting*, 333 F. Supp. at 586 (citing *Red Lion*). The Supreme Court may well revisit *Red Lion* in a case that it will hear later this term, *see Fox Television Stations, Inc.v. FCC*, 613 F.3d 317 (2d Cir. 2010), *cert. granted*, 131 S. Ct. 3065 (2011) (No. 10-1293) (granting review of FCC ban on "fleeting expletives"), as *Red Lion* has repeatedly been called into question.[9] For present purposes, however, it is sufficient to note that the *Red Lion* standard is entirely inapposite here, where the ban does not apply to broadcast advertising pursuant to FCC

---

[9] *See, e.g., FCC v. Fox Television Stations, Inc.*, 129 S. Ct. 1800, 1819-20 (2009) (Thomas, J., concurring) (noting Red Lion's "questionable viability"); *Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 154 (1973) (Douglas, J., concurring in judgment) ("I did not participate in [*Red Lion*] and, with all respect, would not support it."); *Telecomm. Research & Action Ctr. v. FCC*, 801 F.2d 501, 508 (D.C. Cir. 1986) (Bork, J.) ("It is certainly true that broadcast frequencies are scarce but it is unclear why that fact justifies content regulation of broadcasting in a way that would be intolerable if applied to the editorial process of the print media.").

licenses, but rather, to all outdoor advertising as well as all indoor advertisements that can be seen through a window. *See Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 868 (1997) (refusing to extend *Red Lion* beyond broadcast media to the Internet).[10]

*Finally*, it is notable that Worcester's Opposition does *not* rely on the assertions in the accompanying Affidavit of Dr. B. Dale Magee, Worcester's Commissioner of Public Health, (Docket #23-2), about the alleged impact of advertising (or an advertising ban) on smoking behavior. Nor could it. Dr. Magee's reference to unidentified "medical literature" and assertion in the passive voice that "it is felt that a comprehensive ban on advertising will be more effective than a limited one," *id.* at ¶ 9, is precisely the type of "mere speculation or conjecture" that the case law holds insufficient to satisfy the First Amendment. Further, Dr. Magee does not even purport to be an expert on the impact of advertising on smoking behavior.

In short, Worcester bears the burden of actually putting forth *evidence* sufficient to prove that the Ordinance "will in fact alleviate" adult tobacco use "to a material degree," *Edenfield*, 507 U.S. at 771. It has, however, put forward nothing. Accordingly, for this reason as well, the Ordinance violates the First Amendment.

**B.     Worcester Has Not Demonstrated That The Ordinance Is Narrowly Tailored.**

Under *Central Hudson*'s fourth prong, Worcester must prove that the Ordinance is narrowly tailored, such that there is a "reasonable fit between the means and ends of the regulatory scheme," *Lorillard*, 533 U.S. at 561—that is, between the broad ban on outdoor advertising and Worcester's

---

[10] *See also, e.g.*, *Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*, 518 U.S. 727, 741 (1996) (opinion of Breyer, J., for four justices) (describing *Red Lion* as "employing highly flexible standard in response to the scarcity problem unique to over-the-air broadcast"); *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 637 (1994) (refusing to extend *Red Lion* beyond broadcast media to cable television); *Consol. Edison Co. v. Pub. Serv. Comm'n*, 447 U.S. 530, 542-43 (1980) (refusing to extend *Red Lion* beyond broadcast media to messages on public utility's electric bills); *Clifton v. FEC*, 114 F.3d 1309, 1314 (1st Cir. 1997) ( "rationale has no conceivable application" beyond broadcast media to publisher of voter guides); *see also Yes for Life PAC v. Webster*, 84 F. Supp. 2d 150, 153 n.6 (D. Me. 2000) ("I see nothing in [cases including *Red Lion*], however, to suggest that any of [Congress and the FCC's] authority carries over to state legislatures and gives them enhanced authority to intrude upon First Amendment interests of broadcasters or advertisement sponsors.").

purported interest in reducing tobacco use, including an alleged interest in preventing adults from

making lawful purchases.  Once again, however, Worcester fails to carry this burden.

**1.      Worcester Did Not "Carefully Calculate" The Burdens And Benefits Of The Speech Ban.**

As in *Lorillard*, here, "[t]he broad sweep of the [Ordinance] indicates that [Worcester] did not

'carefully calculate the costs and benefits associated with the burden on speech imposed' by the

[Ordinance]."  *Id.*  Indeed, Worcester did not carefully weigh its additional interest in reducing *adult*

tobacco use *at all*, since it relied entirely on congressional and FDA findings related to *youth* tobacco

use.  *See supra* at 10.  The Ordinance further suffers from virtually *every one* of the flaws that the

Court relied upon to conclude that the outdoor advertising ban struck down in *Lorillard* failed to

reflect the "careful calculation" required by the First Amendment:

- The Ordinance imposes "nearly a complete ban on the communication of truthful information about [tobacco products] to adult consumers."  *Lorillard*, 533 U.S. at 562.

- The Ordinance prevents retailers from "communicating to passersby on the street" by "propos[ing] an instant transaction in the way that onsite advertising does."  *Id.* at 565.

- The Ordinance's "ban on any indoor advertising that is visible from the outside . . . presents problems in establishments like convenience stores, which have unique security concerns that counsel in favor of full visibility of the store from the outside."  *Id.*

- The Ordinance indiscriminately "restrict[s] advertisements of any size."  *Id.* at 562.

- The Ordinance imposes special burdens on retailers with "small advertising budgets" and "few avenues of communication," because it cuts off one of the few outlets they have to communicate with adult customers.  *Id.* at 564-65.

In short, as in *Lorillard*, "[t]he breadth and scope of the [Ordinance], and the process by which

[Worcester] adopted [it], do not demonstrate a careful calculation of the speech interests involved."

*Id.* at 562.

Worcester's assertion that the Ordinance "does not restrict advertising *inside* of any retail

establishment," (Opp. at 24), is both demonstrably wrong and irrelevant.  Like the regulation in

*Lorillard*, the Ordinance prohibits "indoor advertising that is visible from the outside."  533 U.S. at

565. It likewise prohibits all *outdoor* point of sale advertising on the retailers' premises. The Ordinance therefore suffers from precisely the same flaws as the regulation struck down in *Lorillard*. *See supra* at 14. The City Solicitor's letter purporting to narrowly construe the Ordinance does not solve these problems. The letter merely states that "the incidental visibility of *tobacco products* through a window at a retail establishment" is not barred by the Ordinance. (Opp. at 24) (quoting Letter of David M. Moore to Greg D'Agostino (May 24, 2011)) (emphasis added). This does nothing to mitigate the impact of the ban on all of Plaintiffs' other indoor "*advertisements*" that are visible through a window. More importantly, as the Supreme Court recently held, "[t]he Government's assurance that it will apply [a law] far more restrictively than its language provides is pertinent only as an implicit acknowledgment of the potential constitutional problems with a more natural reading." *United States v. Stevens*, 130 S. Ct. 1577, 1591 (2010).

Worcester's observation that the Ordinance does not prohibit direct mail, e-mail, and magazine advertising, (Opp. at 23), is also irrelevant. The same, of course, was equally true in *Lorillard*. *See* 533 U.S. at 561-62. But the Supreme Court "ha[s] consistently rejected the suggestion that a government may justify a content-based prohibition [on speech] by showing that speakers have alternative means of expression." *Consolidated Edison Co. v. Pub. Serv. Comm'n*, 447 U.S. 530, 541 n.10 (1980); *see also, e.g.*, *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 430 (1993) (a speech restriction that "is neither content neutral nor . . . 'narrowly tailored' . . . cannot be justified" "regardless of whether or not it leaves open ample alternative channels of communication").[11]

Worcester's assertion that the Ordinance merely prohibits what Plaintiff-manufacturers have already voluntarily agreed not to do is similarly erroneous. (Opp. at 25.) As Worcester concedes, the

---

[11] This rule is particularly apposite where, as here, the supposed alternatives are less effective. *See Lorillard*, 533 U.S. at 565 (under outdoor-adverting ban, "retailer[s] in Massachusetts may have no means of communicating to passersby on the street"); *see also Linmark Assocs. v. Twp. of Willingboro*, 431 U.S. 85, 93 (1977) (alleged alternatives, "in practice" and "realistically," are "far from satisfactory" when they "may be less effective media," "involve more cost and less autonomy," and are "less likely to reach persons not deliberately seeking sales information").

policies to which Worcester refers were voluntarily adopted; they are not licenses to impose binding legal restrictions in violation of the First Amendment.  More importantly, however, the Ordinance goes far beyond these voluntary restrictions.  For example, the City points out that Plaintiff Lorillard Tobacco Company, "as a signatory of the Master Settlement Agreement, agreed to 'end all outdoor tobacco advertising.'"  (Opp. at 25 (citing Lorillard's website).)  But as Lorillard's website makes clear, the MSA's ban on "outdoor advertising" is limited to "billboards, signs and placards in arenas, stadiums, shopping malls, and video game arcades."  http://www.lorillard.com/about-us/legislation/summary-of-maiser-settlement-agreement/#more-30.  The MSA thus *permits* "advertising outside retail establishments" with signs less than "14 square feet," *id.*, as well as indoor advertising even if visible from outside.  Thus, even if certain Plaintiffs' voluntary policies were relevant to Worcester's argument—they are not—they provide no support for the Ordinance's broader and more burdensome ban on all outdoor advertising and all indoor advertising that can be seen through a window.

In that regard, each of the Plaintiff-manufacturers has attested that it engages in advertising that is prohibited by the Ordinance.  *See* (Karrow Decl., Docket #19-2; Gifford Decl., Docket #19-4; Sparrow Decl., Docket #19-5).  Retail stores, including members of Plaintiff National Association of Tobacco Outlets, Inc., likewise routinely use outdoor advertisements to communicate information about tobacco products to adult consumers.  *See* (Kerstein Decl., Docket #19-3).  Indeed, the Worcester City Council expressly relied upon the pervasiveness of such advertising when it adopted the ban in the first place, as evidenced by the photographs that the City Council attached to the agenda/minutes for its April 5, 2011 meeting.  *See* Appendix A (photographs submitted to Worcester City Council).[12]

---

[12] The City's assertion that *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985), "was not decided on the 'narrowly tailored' prong of *Central Hudson*," (Opp. at 26), merits little response.  The Supreme Court in *Zauderer* could not have been clearer as to the relevant legal standard:  "Our recent decisions involving commercial speech have been grounded in the faith that the free flow of commercial information is valuable enough to justify imposing on would-

Accordingly, Worcester has failed to carry its burden of proving that it "'carefully calculate[d] the costs and benefits associated with the burden on speech imposed' by the [Ordinance]." *Lorillard*, 533 U.S. at 561.

> **2.      Worcester Has Not Demonstrated That Obvious Less Restrictive Alternatives Would Be Less Effective Than The Ordinance.**

In addition to showing  that its advertising restriction is not unduly broad, Worcester must also show that its speech restrictions would be more effective at reducing adult tobacco use than "numerous and obvious less-burdensome alternatives to the restriction on commercial speech." *Discovery Network*, 507 U.S. at 417 n.13.  This requires that, as the Supreme Court held in *W. States Med. Center*, "if the Government could achieve its interests in a manner that does not restrict speech, or that restricts less speech, the Government must do so."  535 U.S. at 371.  Here, Worcester simply points to the list of initiatives it claims to have undertaken.  *See* (Opp. at 27-29).  That, however, is irrelevant.  Instead, Worcester must show that its speech ban is more effective than the many obvious less-burdensome alternatives available to it.  It has not even attempted to do this.

The Supreme Court has repeatedly held that under the narrow tailoring prong of *Central Hudson*, the government must show that the speech restrictions it adopted would be more effective in advancing its interests than obvious non-speech alternatives it rejected.  *See, e.g.*, *W. States Med. Ctr.*, 535 U.S. at 372 (invalidating law in light of "[s]everal non-speech-related means of drawing [the] line"); *44 Liquormart*, 517 U.S. at 507 (plurality op.) (invalidating ban on advertising liquor prices because "alternative forms of regulation that would not involve any restriction on speech," such as "higher prices . . . by direct regulation or by increased taxation," limits on "[p]er capita purchases," or "educational campaigns"); *id.* at 530 (O'Connor, J., concurring in the judgment) (pointing to the

---

be regulators the costs of distinguishing the truthful from the false, the helpful from the misleading, and the harmless from the harmful."  471 U.S. at 646.  As this language makes clear, the First Amendment takes a jaundiced view of broad prophylactic speech bans like the Ordinance, because such overly broad bans will rarely satisfy the requirement that government "narrowly tailor" restrictions on speech to the government's asserted interests.  *See id.* at 648 (rejecting "the State's argument . . . that its purposes can only be served through a prophylactic rule").

"ready availability of such [non-speech] alternatives"); *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 490-91 (1995) (same); *Bellsouth Telecomms., Inc. v. Farris*, 542 F.3d 499, 508-09 (6th Cir. 2008) (invalidating speech restriction where the state ignored a "full arsenal of options short of restricting speech"); *Pitt News v. Pappert*, 379 F.3d 96, 108 (3d Cir. 2004) (Alito, J.) (invalidating ban on liquor advertising in college newspapers because there were far "more direct . . . way[s] to combat underage and abusive drinking by college students").

Here, Worcester spends the final pages of its brief listing a variety of programs that it alleges it implemented prior to implementing the speech ban. It notes, for example, that it prohibits the free distribution of tobacco products on public streets, bans the sale of tobacco products to minors, and posed a "non-binding question" to its citizenry on whether smoking should be banned in public buildings. (Opp. at 28-29.) As explained below, Worcester greatly exaggerates its efforts here. *See infra* at 20. More importantly, however, Worcester's brief and supporting papers say *nothing* about the efficacy of the Ordinance's speech ban relative to the numerous and obvious non-speech alternatives available to it. Worcester thus does not explain why it could not reduce tobacco use by at least as much as the speech ban by, for example, (1) increasing resources for smoking cessation programs, (2) public advertising campaigns about the dangers of smoking, (3) adopting programs that address the root causes of smoking, or (4) increasing enforcement of the age of purchase laws. *See* (Reynolds Decl., Docket #29, at ¶ 61).

In sum, it is irrelevant that Worcester purports to have tried other things. Its burden under the First Amendment is to prove that the Ordinance's *speech* ban is more effective than the obvious *non-speech* options it rejected. And Worcester has not even attempted to carry this burden. The Ordinance thus fails First Amendment scrutiny for this reason as well.

### III.    PLAINTIFFS' EXPERT DECLARATIONS FURTHER DEMONSTRATE WHY PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION AND SUMMARY JUDGMENT AND WHY WORCESTER IS NOT.

Points I and II, above, turn solely upon questions of law.  These arguments establish that (1) this case is squarely controlled by *Lorillard* and other binding Supreme Court precedent, and in any event, (2) Worcester has not carried its burden of proving that the Ordinance (a) will materially reduce adult tobacco use, and (b) is narrowly tailored to that goal.  For these reasons alone, Plaintiffs' Motions for Preliminary Injunction and Summary Judgment should be granted, and Defendants' Motion for Summary Judgment should be denied.

In addition, Plaintiffs' expert declarations, provided by Cecil Reynolds and Ronald Faber, further demonstrate why Plaintiffs are entitled to a preliminary injunction and summary judgment, and defendants are not.  These expert affidavits establish:

- The Ordinance will not significantly reduce youth tobacco use.  *See* (Reynolds Decl. at ¶¶ 12, 15, 53-60, 69-78); (Faber Decl., Docket #30, at ¶¶ 6, 13-22, 24-25, 33).

- The Ordinance will not significantly reduce adult tobacco use.  *See* (Reynolds Decl. at ¶¶ 12, 15, 58-60, 69-78); (Faber Decl. at ¶¶ 6, 22-26, 33).

- There are numerous, non-speech restrictive ways that would be more effective at reducing youth tobacco use than the Ordinance.  *See* (Reynolds Decl. at ¶¶ 13-15, 61-63, 65-78).

- There are numerous, non-speech restrictive ways that would be more effective at reducing adult tobacco use than the Ordinance.  *See* (Reynolds Decl. at ¶¶ 14-15, 64, 67-78).

Worcester, in contrast, has put forth no evidence, expert or otherwise, refuting these basic points. Plaintiffs' expert declarations therefore further underscore how Worcester has failed to carry its burden of proving that the Ordinance (1) would result in a material reduction in either adult or youth tobacco use, and (2) is narrowly tailored towards those ends.

For example, Worcester claims that its speech ban will reduce adult tobacco use. *See* (Opp. at 7).  But as Plaintiffs' experts explain, there is no empirical evidence to support such an assertion.  *See* (Reynolds Decl. at ¶¶ 12, 15, 58-60, 69-78); (Faber Decl. at ¶¶ 6, 22-26, 33).  Moreover, because the

Ordinance's advertising ban does not address the root causes of why people smoke—*e.g.*, influence by family and friends—it is unlikely to have any impact on smoking rates at all.  *See* (Reynolds Decl. at ¶¶ 37-52); (Faber Decl. at ¶¶ 12-21).

Likewise, Worcester claims that it has tried numerous non-speech programs but they have failed to reduce smoking rates.  *See* (Opp. 27-29).  But Worcester has not adopted or funded virtually any of its own programs.  Instead, it points to programs run by Massachusetts.  *See* (Reynolds Decl. at ¶¶ 72-77).  Massachusetts, however, woefully underfunds such programs.  Indeed, while the Centers for Disease Control and Prevention recommends that Massachusetts devote $90 million of its $821 million of tobacco revenue to tobacco control programs, Massachusetts spends just 0.5% of that tobacco revenue ($4.5 million) on tobacco control, placing it 37th amongst the Nation's 50 states.  *See* Campaign for Tobacco-Free Kids, *A Broken Promise to Our Children: The 1998 State Tobacco Settlement Twelve Years Later* (Nov. 17, 2010) at 43-44; (Reynolds Decl. at ¶ 67).

Plaintiffs' expert evidence therefore provides a further basis upon which their motions should be granted.  At a minimum, it forecloses summary judgment for Worcester.

## CONCLUSION

This Court should grant Plaintiffs' Motion for Preliminary Injunction and Motion for Summary Judgment, and deny Defendants' Motion for Summary Judgment.


Dated:  October 14, 2011

Respectfully submitted,

/s/ Traci L. Lovitt

Traci L. Lovitt BBO# 680619
Christopher M. Morrison BBO# 651335
JONES DAY
100 High Street
22nd Floor
Boston, MA 02110-1781

(617) 960-3939
tlovitt@jonesday.com
cmorrison@jonesday.com

Noel J. Francisco (admitted *pro hac vice*)
Craig I. Chosiad BBO# 672360
JONES DAY
51 Louisiana Avenue, NW
Washington, DC  20001-2113
cichosiad@jonesday.com

**Attorneys for R.J. Reynolds Tobacco Company**

/s/ Mark K. Schonfeld

Mark K. Schonfeld BBO# 553159
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-2433
mschonfeld@gibsondunn.com

Miguel A. Estrada (admitted *pro hac vice*)
Michael J. Edney (admitted *pro hac vice*)
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, NW
Washington, DC 20036

**Attorneys for National Association of Tobacco Outlets, Inc. and Philip Morris USA Inc.**

/s/ A. John Pappalardo

A. John Pappalardo, BBO# 388760
Victor H. Polk, Jr., BBO# 546099
GREENBERG TRAURIG, LLP
One International Place
Boston, MA  02110
(617) 310-6000
pappalardoj@gtlaw.com
polkv@gtlaw.com

Alan Mansfield (admitted *pro hac vice*)
Stephen L. Saxl (admitted *pro hac vice*)
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, NY 10166

*Attorneys for Lorillard Tobacco Company*

## CERTIFICATE OF SERVICE

     I hereby certify that, on this 14th day of October 2011, the within Reply Memorandum was served upon all counsel of record through this Court's electronic filing system as identified in the Notice of Electronic filing, and paper copies will be sent to those indicated as nonregistered participants.

/s/ Traci L. Lovitt
Traci L. Lovitt

**Appendix A**

The following pages, including illustrations of advertisements visible from the street, are attached to the agenda/minutes for the Worcester City Council's April 5, 2011 meeting.  *See* http://www.worcesterma.gov/agendas-minutes/city-council/2011/20110405.htm (last accessed October 6, 2011):



## CITY OF WORCESTER, MASSACHUSETTS
### CITY CLERK DEPARTMENT

David J. Rushford, City Clerk

Susan M. Ledoux, Assistant City Clerk
Michael J. Monfredo, Assistant City Clerk
Joshua D. Meduna, Assistant Director of Elections

**The following documents were submitted in City Council on April 5, 2011 to the Clerk of the City Council and appended hereto in accordance with provisions of the Commonwealth of Massachusetts Open Meeting Law.**

Room 206, City Hall ▪ 455 Main Street ▪ Worcester, Massachusetts 01608-1889
Telephone (508) 799-1121 ▪ Fax (508) 799-1194
E-Mail: clerk@worcesterma.gov



# Teens Tackle Tobacco
# in Worcester, Massachusetts











