UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NATIONAL ASSOCIATION OF        )
TOBACCO OUTLETS, INC.; R.J.    )
REYNOLDS TOBACCO COMPANY;      )
PHILIP MORRIS USA INC.; and    )
LORILLARD TOBACCO COMPANY,     )
                               )
              Plaintiffs,      )    CIVIL ACTION NO.
                               )    11-40110-DPW
v.                             )
                               )
CITY OF WORCESTER,             )
MASSACHUSETTS; DIVISION OF     )
PUBLIC HEALTH OF WORCESTER,    )
MASSACHUSETTS; B. DALE MAGEE,  )
IN HIS OFFICIAL CAPACITY AS    )
COMMISSIONER OF PUBLIC HEALTH  )
OF WORCESTER, MASSACHUSETTS;   )
MICHAEL V. O'BRIEN, IN HIS     )
OFFICIAL CAPACITY AS CITY      )
MANAGER OF WORCESTER,          )
MASSACHUSETTS                  )
                               )
              Defendants.      )

MEMORANDUM AND ORDER
March 31, 2012

Plaintiff National Association of Tobacco Outlets, Inc., an

association representing the interests of tobacco retailers,

tobacco-related manufacturers, and tobacco-related wholesale

distributors; and Plaintiffs R.J. Reynolds Tobacco Company;

Philip Morris USA Inc.; and Lorillard Tobacco Company, tobacco

manufacturers, bring this action against the City of Worcester,

its Division of Public Health, its Commissioner of Public Health,

and its City Manager, challenging as violative of the First

Amendment the recently enacted provision of Worcester's Tobacco

Products Control Ordinance (the "Ordinance") that prohibits
outdoor advertising of tobacco products within the City of
Worcester.  The plaintiffs filed a Complaint seeking preliminary
and permanent injunctions preventing enforcement of the provision
and a declaratory judgment regarding its constitutionality.
Before me is a motion for preliminary injunctive relief and for
summary judgment.

## I.  BACKGROUND

On May 10, 2011, the Worcester City Council amended its
Tobacco Products Control Ordinance.  Worcester Massachusetts
Revised Ordinances of 2008 ch. 8, § 3.  One new provision of the
Ordinance regulates the advertisement of tobacco products in
Worcester.  It states:

> No person shall display any advertising that promotes or
> encourages the sale or use of cigarettes, blunt wrap or
> other tobacco products in any location where any such
> advertising can be viewed from any street or park shown on
> the Official Map of the city or from any property containing
> a public or private school or property containing an
> educational institution . . . .

*Id.* at (i)(1).

A second provision states that "[n]o retail establishment or
entity shall sell or cause to be sold blunt wraps." *Id*. at
(g)(7).  The definition of a "blunt wrap" explains that it is a
"cigarette-like rolling paper that is thick and dark and usually
made from tobacco leaves.  Blunt wraps come in flavored varieties
and are heavily marketed to the youth and often used as drug

2

paraphernalia."  The restriction on sale of blunt wraps is no longer in dispute.[1]

Prior to final adoption of the Ordinance, the Worcester City Council made a number of findings.  Most of these findings related to the harms caused by tobacco and the relationship between tobacco advertising and increased tobacco use.  Among the findings are the following:

- There exists conclusive and voluminous evidence that tobacco causes cancer, respiratory and cardiac diseases, negative birth outcomes, irritations to the eyes, nose and throat;

---

[1] Oral argument regarding the motions in the instant case was conducted together with argument in a related case, Civil Action No. 11-40119, in which Plaintiffs National Tobacco Co., LP, and New Image Global, Inc., sought preliminary and permanent injunctions and declaratory judgments regarding the Worcester blunt wrap sales ban and the advertising ban as it related to blunt wraps.  At the time of the oral argument in the two related cases, an application for further appellate review was pending in a third case, *RYO Cigar Association, Inc. v. Boston Public Health Commission*, 79 Mass. App. Ct. 822 (2011), in which the Massachusetts Appeals Court had denied relief to distributors of blunt wraps who sought to prevent enforcement of a Boston blunt wrap sales ban almost identical to the Worcester sales ban that was at issue in Civil Action No. 11-40119.  After I heard the arguments, the Massachusetts Supreme Judicial Court denied the application for further appellate review in *RYO Cigar Association, Inc.*  958 N.E.2d 529 (Table) (Mass. 2011).  The plaintiffs in Civil Action No. 11-40119 then attempted voluntarily to dismiss their complaint without court order pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).  I directed the clerk to reopen the matter because the plaintiffs could not as a matter of right dismiss the case once the defendants had moved for summary judgment.  On March 21, 2012, both parties stipulated to dismiss the action without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). Consequently, the Ordinance's ban on the sale of blunt wraps in in effect and no longer under the cloud of litigation.

- The surgeon general had determined that nicotine is a powerfully addictive drug;
- 23.7% of adults in the city of Worcester over 18 years of age smoke, a level which is 47% higher than the statewide average of 16.1%;
- At least one-half of all smokers begin smoking before the age of eighteen and an estimated 3,000 minors begin smoking every day in the United States;
- Tobacco advertising and marketing contribute significantly to the use of nicotine-containing tobacco products by adolescents;
- Tobacco advertising expands the size of the tobacco market by increasing consumption of tobacco products including tobacco use by young people;
- Comprehensive advertising restrictions will have a positive effect on the smoking rates of young people and adults;
- Despite a progression of federal laws, state laws and city ordinances enacted over the past several decades which prohibited the sale of tobacco products to minors, required warning labels on cigarette packages, prohibiting [sic] television and radio advertising of tobacco products, prohibited the distribution of free cigarettes, prohibited smoking in public places, prohibited smoking in restaurants, prohibited smoking in workplaces and buildings, prohibited vending machine sale of tobacco products, [and] required tobacco sales permits . . . the marketing strategies continue and the rampant use of tobacco products and the death and devastation resulting therefrom continue at the epidemic levels described herein.

The plaintiffs are concerned that the Ordinance's advertising regulation will impede their ability to market their products within the City of Worcester. They initially moved for a preliminary injunction to enjoin enforcement of the advertising provision. The parties have stipulated to a stay of enforcement of the Ordinance pending litigation of the motion.

During a scheduling conference with the parties, I suggested the possibility that the issues presented might be ripe for

summary judgment.  The plaintiffs then moved for summary
judgment, referring to the arguments made in their memoranda in
support of their motion for a preliminary injunction.  As will
appear below, I find the issues lend themselves to resolution by
summary judgment and consequently will not pause to address the
preliminary injunction motion.

## II. STANDARD OF REVIEW

A movant is entitled to summary judgment when "the movant
shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56(a).  "A dispute is genuine if the evidence about
the fact is such that a reasonable jury could resolve the point
in the favor of the non-moving party," and "[a] fact is material
if it has the potential of determining the outcome of the
litigation." *Farmers Ins. Exch. v. RNK, Inc.,* 632 F.3d 777, 782
(1st Cir. 2011) (quoting *Rodríguez-Rivera v. Federico Trilla
Reg'l Hosp.,* 532 F.3d 28, 30 (1st Cir. 2008)).  In evaluating a
motion for summary judgment, a court must "view the facts in the
light most favorable to the party opposing summary judgment."
*Rivera-Colón v. Mills,* 635 F.3d 9, 10 (1st Cir. 2011).

## III. ANALYSIS

At issue is the plaintiffs' contention that the Ordinance's
provision prohibiting outdoor advertising (and indoor advertising
that can be viewed from the street) violates their First

Amendment commercial speech rights under the United States Constitution.

Commercial speech such as this is subject to the First Amendment, but afforded a lesser protection than other types of expression. *United States v. Edge Broadcasting Co.*, 509 U.S. 418, 426 (1993). The Supreme Court has set forth a sequential test to determine the validity of a regulation of commercial speech:

> In commercial speech cases . . . a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, [1] it at least must concern lawful activity and not be misleading. Next, we ask whether [2] the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation [3] directly advances the governmental interest asserted, and whether [4] it is not more extensive than is necessary to serve that interest.

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566 (1980). Applying the test here,[2] I find the Ordinance violates the First Amendment.

---

[2] As the Supreme Court has acknowledged, "several Members of the Court have expressed doubts about the *Central Hudson* analysis and whether it should apply in particular cases." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 554 (2001). However, at this point no majority decision has rejected the analysis of *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980). The case is governing precedent and I am obligated to follow the direction it provides.

## A.   Nonmisleading Advertisements Regarding Lawful Activity

The defendants do not contend that the advertisements prohibited by the Ordinance are misleading (at least as a general matter).  Additionally, the defendants concede that the Ordinance prohibits speech concerning lawful activity with regard to the sale of most tobacco products.  However, because the Ordinance also prohibits the sale of blunt wraps in Worcester, the defendants contend that the plaintiffs' First Amendment case regarding blunt wraps alone founders at the first step of the *Central Hudson* analysis.  They claim that because cigar wrap sales are unlawful in Worcester, the First Amendment offers no protection to blunt wrap advertisements in Worcester.

The "lawful activity" inquiry under *Central Hudson* requires a consideration of whether the regulated speech at issue "is speech proposing an illegal transaction." *Village of Hoffman Estates v. Flipside*, *Hoffman Estates, Inc.*, 455 U.S. 489, 496 (1982).  A transaction need not be criminal to be "illegal" in this context, and its illegality may stem from its prohibition by a city ordinance.  For example, in support of the illegal activity exception to First Amendment protection, *Central Hudson* cites *Pittsburgh Press Co. v. Human Relations Commission*, 413 U.S. 376 (1973), a case in which a ban on commercial speech related to illegal activity was upheld, where the illegal

7

activity at issue was employment discrimination in violation of a Pittsburgh anti-discrimination ordinance.

Here, the defendants fail to consider the legality of the different types of transactions the promotion of which is prohibited by the Worcester Ordinance.  While an advertisement in Worcester specifically promoting sales of blunt wraps in Worcester promotes unlawful activity, an advertisement in Worcester promoting such sales in the nearby city of Fitchburg (where sales are apparently lawful) or an advertisement promoting such sales generally, without reference to location, is within the scope of First Amendment protection.

One of the first Supreme Court cases to provide First Amendment protections to commercial speech addressed the broad issue of advertising of services and products unlawful where the advertising ban is imposed but lawful in other jurisdictions.  In *Bigelow v. Virginia*, 421 U.S. 809 (1975), the Supreme Court held that a Virginia statute making it a misdemeanor to encourage the procurement of an abortion violated the First Amendment when the statute was applied to a Virginia newspaper editor who had published an advertisement from a New York abortion referral service regarding legal abortions in New York.  The Court stated:

> [A State] may not, under the guise of exercising internal police powers, bar a citizen of another State from disseminating information about an activity that is legal in that State.

*Bigelow*, 421 U.S. at 824-25.  The Court went on to explain:

8

> Here, Virginia is really asserting an interest in regulating
> what Virginians may hear or read about the New York
> services.  It is, in effect, advancing an interest in
> shielding its citizens from information about activities
> outside Virginia's borders, activities that Virginia's
> police powers do not reach.  This asserted interest, even if
> understandable, was entitled to little, if any, weight under
> the circumstances.

*Id.* at 827-28.  The Supreme Court thus took a strong position
against the constitutionality of a prohibition by one locality,
such as Worcester, on advertising regarding activities lawful in
another locality, such as Fitchburg.

The Sixth and Ninth Circuit Courts of Appeal have, as I do,
interpreted *Bigelow* to mean that an activity is 'lawful' under
the *Central Hudson* test so long as it is lawful where it will
occur.

In *Katt v. Dykhouse*, the Sixth Circuit discussed "whether
the First Amendment protects speech that proposes a transaction
lawful in the place where the transaction is to occur when both
the underlying transaction and the offer are unlawful in the
place where the offer is made" and "conclude[d] that the First
Amendment does provide such protection."  *Katt*, 983 F.2d 690, 695
(6th Cir. 1992).  *See also Record Revolution No. 6, Inc. v. City
of Parma*, 638 F.2d 916, 937 (6th Cir. 1980), *vacated and remanded
on other grounds*, 456 U.S. 968 (1982) ("The cities' interest in
regulation of advertising is limited to preventing the sale of
drug paraphernalia inside their municipal boundaries.  Their
legitimate interest does not include regulating the information

heard or read by their citizens about the availability of legal 'drug paraphernalia' in other locales.").

In *Washington Mercantile Association v. Williams*, the Ninth Circuit held that "[s]ale or delivery of drug paraphernalia is illegal in Washington, so advertisements for sales or mail orders from Washington are unprotected speech.  In contrast, the advertiser who proposes a transaction in a state where the transaction is legal is promoting a legal activity.  Its speech deserves First Amendment protection."  *Washington Mercantile*, 733 F.2d 687, 691 (9th Cir. 1984).[3]

Additionally, while neither has decided the issue, the First Circuit and the Eighth Circuits have both spoken favorably regarding the argument for First Amendment protection based on *Bigelow*.  *See New England Accessories Trade Ass'n, Inc. v. City of Nashua*, 679 F.2d 1, 4 (1st Cir. 1982) ("If New York, or some

---

[3]  The Ninth Circuit appears to have narrowed its *Washington Mercantile* holding more recently in *Coyote Publishing, Inc. v. Miller*, 598 F.3d 592 (9th Cir. 2010).  The Ninth Circuit in *Coyote Publishing* held that the First Amendment provided less protection to an advertising restriction because the restriction was justified not just "in terms of the negative consequences that might flow from residents of one state traveling to another to obtain a service," *Coyote Publishing*, 589 F.3d at 607, but also in order to "prevent[] harms inherent in the advertising messages," *id.* at 607 n.18, namely the commodification of sex. *Coyote Publishing* is not altogether apposite because no inherent harm in the advertising itself beyond the promotion of tobacco use is raised as a concern in the instant case.  More generally, I have reservations regarding the *Coyote Publishing* approach, which turns on the notion that a restriction on speech due to disagreement with the ideas expressed justifies providing *less* protection than that afforded ordinary commercial speech.

other state, decided to legalize the sale and use of marijuana, New Hampshire would have greater difficulty under *Bigelow* prohibiting an advertisement suggesting that the Big Apple was the place to get high on marijuana."); *Casbah, Inc. v. Thone*, 651 F.2d 551, 564 n.19 (8th Cir. 1981) ("Out-of-state advertisers arguably have a first amendment right to make their wares known to Nebraska citizens.").

I conclude the *Bigelow* reasoning should apply to advertising in a city where the proposed transaction is illegal so long as the transaction is legal elsewhere and the advertising does not specifically propose a transaction in a locale where that transaction is illegal.  Worcester may not properly bar those who seek to disseminate information so as to enable its citizens to make better informed decisions about transactions that are legal elsewhere.  Under the first prong of *Central Hudson*, the City of Worcester may not bar, for example, the dissemination of information to Worcester residents about the characteristics of various brands of blunt wraps for sale outside of Worcester, so long as the advertising does not specifically propose a sale in Worcester or some other locale where such a transaction would be illegal.

*Central Hudson*'s unlawfulness prong would deny First Amendment protection only to blunt wrap advertisements that promote the illegal sale of blunt wraps.  For example, the

unlawfulness prong would deny protection to blunt wrap advertisements that promote the sale of blunt wraps within Worcester, including but not limited to such signs as "cigar wraps available here."  To the extent that the blunt wrap advertisement does not specifically promote such unlawful activity––that is, does not specifically promote a sale to occur within a jurisdiction where it is illegal––it would pass the first step of the *Central Hudson* test.

## B.   Substantial Government Interest

The plaintiffs do not claim that the City of Worcester lacks a substantial government interest in preventing youth tobacco use.[4]  However, they argue that the City's substantial interest is limited to protecting minors.  They contend that the City has no legitimate interest in prohibiting non-misleading advertising to adults to prevent them from making decisions of which the City disapproves.

I agree.  In *Thompson v. Western States Medical Ctr.*, 535 U.S. 357 (2002), the Supreme Court considered a First Amendment challenge to a statute prohibiting the promotion of compounded drugs.  The majority opinion stated:

> Even if the Government had argued that the . . . speech-related restrictions were motivated by a fear that

---

[4]  Nor could they.  The Supreme Court has acknowledged that "[t]he governmental interest in preventing underage tobacco use is substantial, and even compelling . . . ."  *Lorillard*, 533 U.S. at 564.

> advertising compounded drugs would people who do not need
> such drugs at risk . . . . this concern amounts to a fear
> that people would make bad decisions if given truthful
> information about compounded drugs.  We have previously
> rejected the notion that the Government has an interest in
> preventing the dissemination of truthful commercial
> information in order to prevent members of the public from
> making bad decisions with the information.

*Thompson*, 535 U.S. at 374 (internal citations omitted).  The

Court thus rejected the principal interest advanced by the City

of Worcester in support of its advertising restriction, namely

the prevention of the dissemination of truthful information about

a category of disfavored products in order to prevent members of

the public from making the bad decision to use those products.

The Supreme Court in *Thompson* explained that this type of

interest is foreclosed by the First Amendment.  The majority

stated that "[i]t is precisely this kind of choice, between the

dangers of suppressing information, and the dangers of its misuse

if it is freely available, that the First Amendment makes for

us."  *Id.* at 375 (quoting *Virginia State Board of Pharmacy v.

Virginia Citizens Consumer Council*, 425 U.S. 748, 770 (1976)).

*Thompson* made clear that the government may not promote its

policy preferences "by keeping the public in ignorance."  *Id.*

(quoting *Virginia State Board of Pharmacy v. Virginia Citizens

Consumer Council*, 425 U.S. 748, 770 (1976)).

The defendants argue that *Thompson* is inapposite.  They

point out that *Thompson* turned on the fourth, and not the second,

prong of the *Central Hudson* test. *Id*. at 371-74. They further note that the government never argued that its interest depended on doctors succumbing to advertising-induced pressure from patients, observing that the opinion begins the section with the words "*[e]ven if* the Government had argued . . . ." *Id*. at 375 (emphasis added). The defendants' contention boils down to a claim that the language quoted from *Thompson* is mere dicta.

Where a statement in a Supreme Court majority opinion is "dictum that appears to have been carefully considered," the First Circuit has stated that it is "both unable to ignore [the dictum] and unwilling to do so." *McCoy v. Massachusetts Institute of Technology*, 950 F.2d 13, 19 (1991). Here, the dicta bears "the earmarks of careful consideration." *Id*. In support of its position, the majority in *Thompson* considered Supreme Court precedents, indicating that thought and research went into the statement. Moreover, the majority appears to have been responding to the dissenting opinion, which states that "[t]here is considerable evidence that consumer oriented advertising will create strong consumer-driven demand for a particular drug," that "there is strong evidence that doctors will often respond affirmatively to a patient's request for a specific drug that the patient has seen advertised," and that prescriptions written "even in the absence of special need" would lead to "individual risks [that] added together can significantly affect the public

health." *Thompson*, 535 U.S. at 383-84 (Breyer, dissenting).  The
majority was thus presented with the opposing viewpoint and
nonetheless stated that the government has no such interest.

While the *Thompson* Court's statement was, strictly speaking,
dicta, lower courts "are bound by the Supreme Court's considered
dicta almost as firmly as by the Court's outright holdings,
particularly when, as here, a dictum is of recent vintage and not
enfeebled by any subsequent statement." *McCoy*, 950 F.2d at 19.
The defendants point to no subsequent statement placing the
*Thompson* statement in doubt.  In the instant case, the *Thompson*
reasoning means that the City of Worcester cannot meet the
substantial interest prong of the *Central Hudson* test as applied
to the Ordinance's protection of adults from tobacco advertising.
The question of the substantial interest in protecting minors
from tobacco advertising will be considered in Section III. E.
*infra.*

C. **Interim Conclusions Regarding Threshold *Central Hudson* steps**

Marginally affirmative answers can be given to the threshold
questions whether the Ordinance bans nonmisleading advertising
concerning lawful activity and whether the city has a substantial
interest in restricting such advertising.  To the degree that the
advertising under consideration proposes the sale of tobacco
products in a jurisdiction where the transaction is lawful, the
first *Central Hudson* factor is satisfied.  And to the degree that

15

the advertising is addressed to minors, Worcester has a
substantial interest supporting restrictions as to them at least
to the extent the restriction is no more than is necessary to
serve that interest; Worcester has thus satisfied the second
*Central Hudson* factor.  I now to turn to consideration of the
third and fourth *Central Hudson* factors.

## D.   **Direct Advancement**

The City of Worcester can not meet the separately considered
direct advancement factor of the *Central Hudson* analysis as
applied to the Ordinance's protection of adults from tobacco
advertising.  In *Sorrell v. IMS Health Inc.*, 131 S.Ct. 2653
(2011), the Supreme Court considered a challenge to a Vermont law
preventing pharmacies from sharing prescriber-identifying
information for marketing purposes.  The *Sorrell* Court did not
address the substantial interest prong of the *Central Hudson*
test.  Instead, the *Sorrell* decision skipped ahead to the direct
advancement factor, and integrated what is substantially the same
reasoning discussed in *Thompson* into that third factor.  The
Court stated:

> While Vermont's stated policy goals may be proper, [the
> statute] does not advance them in a permissible way.  As the
> Court of Appeals noted, the state's own explanation of how
> [the statute] advances its interests cannot be said to be
> direct.  The State seeks to achieve its policy objectives
> through the indirect means of restraining certain speech by
> certain speakers--that is, by diminishing detailers' ability
> to influence prescription decisions.

16

*Id.* at 2670 (internal citation omitted). Explaining its objection to those means, the Court went on to cite *Thompson*:

> Those who seek to censor or burden free expression often assert that disfavored speech has adverse effects.  But the "fear that people would make bad decisions if given truthful information" cannot justify content-based burdens on speech.

*Id.* (citing *Thompson*, 535 U.S. at 374).

The *Sorrell* Court developed the full ramifications of this reasoning.  In rejecting the Vermont's argument that the marketing was targeted because it was particularly effective (and to that degree particularly harmful), the Court stated:

> This reasoning is incompatible with the First Amendment.  In an attempt to reverse a disfavored trend in public opinion, a State could not ban campaigning with slogans, picketing with signs, or marching during the daytime.  *Likewise the State may not seek to remove a popular but disfavored product from the marketplace by prohibiting truthful, nonmisleading advertisements that contain impressive endorsements or catchy jingles.*  That the State finds expression too persuasive does not permit it to quiet the speech or to burden its messengers.

*Id.* at 2671 (emphasis added).  Under *Sorrell*, the City of Worcester may not seek to remove a popular but disfavored type of products--those products that serve tobacco usage--from the marketplace by prohibiting truthful, nonmisleading advertisements directed to adults.

The defendants argue that *Sorrell* should be distinguished because "the City's interest supporting the Ordinance is not a mere policy difference on the question whether people should smoke cigarettes, it is a question of saving lives, reducing

serious illness and reducing expenses, all caused by a product that, when used as intended by its manufacturers, inflicts death and destruction on a massive scale." This argument does not accord with the reasoning used by the Court in *Sorrell*. *Sorrell* did not decide the substantiality prong; it was immaterial to the decision whether Vermont's interest was unimportant or quite crucial. *Id*. at 2670. The Court found it sufficient to note that the speech was prohibited in order to prevent it from persuading its intended audience; that alone indicated that the law failed to meet the direct achievement prong and therefor infringed the First Amendment.

Decided in the Supreme Court's last term, *Sorrell* is the Court's last word to date regarding restrictions on commercial speech. Under *Sorrell*, Worcester may not prohibit tobacco advertisements in order to prevent adults from making the choice to legally purchase tobacco products. Worcester "has burdened a form of protected expression that it found too persuasive. At the same time, [Worcester] has left unburdened those speakers whose messages are in accord with its own views. This [it] cannot do." *Id*. at 2672. *Sorrell*, however, does not address a substantial interest in restricting advertising directed at minors. As to that interest, the fourth factor in the *Central Hudson* analysis is dispositive.

**E.   Extent Necessary to Serve the Government's Interest**

While the restriction of truthful advertisements in order to prevent *adults* from purchasing a disfavored product fails on the second and third prongs of the analysis, the Worcester Ordinance additionally, perhaps principally, was enacted to prevent minors from accessing and using tobacco products.  However, any argument for the constitutionality of the Worcester Ordinance based on this purpose is no more successful in light of the fourth prong of analysis.  The only relevant difference that the defendants have identified between the Ordinance and the statute that the Supreme Court ruled violated the First Amendment in *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001), is that the Ordinance's purpose is to protect adults as well as children. The defendants conceded at oral argument that the speech restriction's validity depended on that difference. Understandably, even the defendants do not argue, in the final analysis, that the Ordinance can be upheld in order to protect minors from accessing tobacco products.  A consideration of *Lorillard* will demonstrate why.

In *Lorillard*, the Supreme Court invalidated a Massachusetts statute enacted to protect minors from tobacco products.  The advertising restrictions were almost identical to the restrictions in the Ordinance, except that the statute's

geographical requirements were somewhat more lenient.  In the statute at issue in *Lorillard* advertisements visible from the street were only prohibited within 1000 feet of a school or playground. In the Worcester Ordinance they are prohibited anywhere in the City.

The Supreme Court ruled that the statute in *Lorillard* violated the First Amendment because it did not satisfy the fourth factor in the *Central Hudson* analysis: it was more extensive than necessary to serve the government's interest.  The Court stated that while "[t]he State's interest in preventing underage tobacco use is substantial, and even compelling . . . . We must consider that tobacco retailers and manufacturers have an interest in conveying truthful information about their products to adults, and adults have a corresponding interest in receiving truthful information about tobacco products."  *Id*. at 564.  The Court held that "[t]he governmental interest in protecting children from harmful materials . . . does not justify an unnecessarily broad suppression of speech addressed to adults."  *Id*. (quoting *Reno v. American Civil Liberties Union*, 521 U.S. 844, 875 (1997)) (alteration in original).

Like the Commonwealth of Massachusetts in *Lorillard*, the City of Worcester failed to differentiate among the different locales affected by the Ordinance.  It is possible that some points of sale are generally frequented by minors and others are

20

almost solely occupied by adults.  It is possible that some
neighborhoods and some types of stores would be more burdened by
the Ordinance.  A "case specific analysis makes sense, for
although a State or locality may have common interests and
concerns about underage smoking and the effects of tobacco
advertisements, the impact of a restriction on speech will
undoubtedly vary from place to place . . . . The uniformly broad
sweep of the geographical limitation demonstrates a lack of
tailoring."  *Id*. at 563.

In addition, beyond the issue of geographic limitations is
the question of what types of advertising should be restricted.
"To the extent that studies have identified particular
advertising and promotion practices that appeal to youth,
tailoring would involve targeting those practices while
permitting others.  As crafted, the [Ordinance]
make[s] no distinction among practices on this basis."  *Id*.  The
defendants do not contend that they made any effort to determine
what types of advertisements are most harmful to minors.  The
broad sweep of the Ordinance suggests that the defendants did not
consider how to tailor the restrictions so as not unduly to
burden the plaintiffs' free speech rights and the rights of
adults to truthful information about tobacco products.

Further, the Ordinance does not distinguish between types of
signs.  "[A] ban on all signs of any size seems ill suited to

target the problem of highly visible billboards, as opposed to smaller signs." *Id*. Nor does the Ordinance distinguish between different types of retailers. "The ban on any indoor advertising that is visible from the outside . . . presents problems in establishments like convenience stores, which have unique security concerns that counsel in favor of full visibility of the store from the outside. It is these sorts of considerations that the [City Council] failed to incorporate into the regulatory scheme." *Id*. at 565.

Following the Court in *Lorillard*, I "conclude that the [defendants have] failed to show that the outdoor advertising regulations . . . are not more extensive than necessary to advance the [City's] substantial interest in preventing underage tobacco use." *Id*. Neither the City's goal to prevent tobacco related health problems among adults nor its correlative goal regarding minors provides a basis for the Ordinance to meet all four prongs of the *Central Hudson* test.

### IV.   CONCLUSION

For the reasons set forth above, I GRANT summary judgment to the plaintiffs and direct entry of judgment declaring[5]

---

[5] I decline to issue an injunction where declaratory judgment is sufficient. There is "no allegation here and no proof that respondents would not, nor can [I] assume that they will not, acquiesce in the decision . . . holding the challenged ordinance unconstitutional." *Poe v. Gerstein*, 417 U.S. 281, 281 (1974) (per curiam) (quoting *Douglas v. City of Jeannette*, 319 U.S. 157, 165 (1943)). "The Federal Declaratory Judgment Act was intended to

unconstitutional Worcester's prohibition on advertising the sale of tobacco products.

/s/ Douglas P. Woodlock
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

---

provide an alternative to injunctions against state officials," *Steffel v. Thompson*, 415 U.S. 452, 467 (1974), and "[a]ny such declaration shall have the force and effect of a final judgment or decree," 28 U.S.C. § 2201.